UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREQUENCY, LLC, f/k/a GOODRADIO.TV, LLC<br><br>                                                          Plaintiff,<br>                    -against-<br><br>CLEAR CHANNEL BROADCASTING, INC.<br><br>                                                          Defendant. | 1:07-cv-07785 (PKC)<br><br>AMENDED COMPLAINT |

Plaintiff Frequency, LLC, f/k/a GoodRadio.TV, LLC ("Frequency" or "Plaintiff"), by and through its attorneys, Cravath, Swaine & Moore LLP, for its Complaint against Defendant Clear Channel Broadcasting, Inc. ("CCBI" or "Defendant"), alleges, on personal knowledge as to its own actions and upon information and belief as to the actions of others, as follows:

### Summary of the Action

1.      This action arises out of an Asset Purchase Agreement, dated as of April 30, 2007 ("APA"), between Plaintiff Frequency as Buyer and Defendant CCBI (and several of Defendant's corporate affiliates) as Seller. (A copy of the APA is attached as Exhibit A.)

2.      This is a civil action seeking damages for breach of contract and declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

### The Parties

3.      Plaintiff Frequency, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in New York.

4. Defendant CCBI is a corporation organized under the laws of Nevada, with its principal place of business in Texas. It is licensed to do business in New York.

### Jurisdiction and Venue

5. The Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and the controversy is between citizens of different states.

6. This Court has personal jurisdiction over Defendant, which conducts business in the state of New York. Also, twenty of the radio stations that are to be transferred by Defendant under the APA are located in New York.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391.

### Allegations of Fact

8. On April 30, 2007, Plaintiff and Defendant (and several of Defendant's corporate affiliates) entered into the APA. Pursuant to the APA, Plaintiff contracted to purchase from Defendant certain of Defendant's radio stations and related assets, for the price of $452,100,000.

9. Pursuant to Section 1.6 of the APA, Plaintiff made a Deposit in the amount of $20,344,500, to be held in escrow until the transaction closed, or until the APA is terminated.

10. In Section 2.15 of the APA, Defendant warranted to Plaintiff as follows:

> Seller has provided to Buyer copies of its statements of operations for the Stations for the years ended December 31, 2004, December 31, 2005 and December 31, 2006 and for the year to date through March 31, 2007.

Such year-end statements are the statements included in the audited consolidated financial statements of Seller and its affiliates (but such statements are not separately audited and the year to date statements are not audited). Shared operating expenses and revenue from combined sales are allocated among the Stations and other stations and business units as determined by Seller. Except for the foregoing and except for the absence of footnotes, such statements have been prepared in accordance with GAAP consistently applied and in the aggregate present fairly in all material respects the results of operations of the Stations as operated by Seller for the respective periods covered thereby.

11. Plaintiff used the financial statements provided by Defendant to Plaintiff prior to execution of the APA to calculate an acceptable purchase price.

12. Upon information and belief, Defendant was aware that Plaintiff was relying upon Defendant's financial statements to arrive at an acceptable purchase price.

13. After execution of the APA, Plaintiff discovered that Defendant had, in the financial statements for the assets being sold to Plaintiff, understated its expenses related to certain software licensing fees and services that Defendant and its corporate parent, Clear Channel Communications, Inc., provided to the stations.

14. These software licensing fees were discrete and specific in nature and not shared expenses that Defendant was permitted, under Section 2.15 of the APA, to allocate at its discretion.

15. These expenses were omitted from the financial statements provided by Defendant to Plaintiff prior to execution of the APA.

16. After the closing of the transaction contemplated by the APA, Plaintiff would have to continue paying these expenses to Defendant or Defendant's corporate parent if Plaintiff wanted to continue utilizing the services and software.

17. Defendant was made aware of the expense understatement subsequent to execution of the APA only after employees of the stations to be transferred pursuant to the APA alerted Defendant to the inconsistencies between the expenses appearing in the financial statements and the actual expenses of the stations.

18. The expense understatement totaled approximately $1.54 million for the year 2006, which results in earnings being overstated by that amount.

19. In the context of the financial statements provided by Defendant to Plaintiff, the expense understatement (and earnings overstatement) of $1.54 million is material, and the financial statements provided by Defendant to Plaintiff are not "prepared in accordance with GAAP consistently applied" and do not "in the aggregate present fairly in all material respects the results of operations of the Stations as operated by Seller".

20. In Section 2.15 of the APA, Defendant also warranted to Plaintiff as follows: "Between March 31, 2007 and the date of this Agreement, the Stations have been operated in all material respects in the ordinary course of business consistent with the terms of Section 4.1 other than Sections 4.1 (e), (f) and (g)".

21. In Section 4.1(a) of the APA, Defendant covenanted with Plaintiff as follows:

> Between the date hereof and Closing, except as permitted by this Agreement or with the prior written consent of Buyer, which shall not be unreasonably withheld, delayed or conditioned, Seller shall: (a) operate the Stations in the ordinary course of business consistent with past practice and in all material respects in accordance with FCC rules and regulations and with all other applicable laws, regulations, rules and orders.

22.   During the periods set forth in Sections 2.15 and 4.1(a) of the APA, Defendant mismanaged the stations to be transferred to Plaintiff by operating them in a manner inconsistent with past practices and ordinary course of business practices.

23.   For example, during the periods set forth in Sections 2.15 and 4.1(a) of the APA, Defendant, in a manner inconsistent with past practices and ordinary course of business practices, materially reduced marketing and promotion expenditures with respect to the stations to be transferred to Plaintiff.

24.   Defendant's reduction of marketing and promotion expenditures deviated from its past operations of the stations to be transferred to Plaintiff under the APA.

25.   Also, upon information and belief, during the periods set forth in Sections 2.15 and 4.1(a) of the APA, Defendant, in a manner inconsistent with past practices and ordinary course of business practices, materially reduced capital expenditures with respect to the stations to be transferred to Plaintiff.

26.   Upon information and belief, during the periods set forth in Sections 2.15 and 4.1(a) of the APA, Defendant also failed to keep or replace key employees at the stations to be transferred to Plaintiff, or to replace them with employees of similar experience and qualifications.

27.   Upon information and belief, Defendant's failure to keep or replace the key employees at the stations to be transferred to Plaintiff under the APA deviated from its past operations of the stations to be transferred to Plaintiff.

28.   As a result of Defendant's mismanagement of the stations to be transferred to Plaintiff under the APA by operating them in a manner inconsistent with

past practices and ordinary course of business practices, including but not limited to Defendant's reduction of marketing and promotion expenditures, its failure to keep or replace key employees, and its material reduction of capital expenditures, the financial condition of the assets to be transferred to the Plaintiff has been significantly impaired.

29. In Section 4.1(e) of the APA, Defendant covenanted with Plaintiff as follows:

> Between the date hereof and Closing, except as permitted by this Agreement or with the prior written consent of Buyer, which shall not be unreasonably withheld, delayed or conditioned, Seller shall: (e) upon reasonable notice, give Buyer and its Representatives (as defined in the NDA (defined below)) and Credentialed Buyers (as defined in Section 5.1) reasonable access during normal business hours to the Station Assets, furnish Buyer with information relating to the Station Assets that Buyer may reasonably request, provided that such access rights shall not be exercised in a manner that interferes with the operation of the Stations, and, upon Buyer's reasonable request, furnish Buyer with monthly statements of operations in respect of the Stations in the form generated by Seller in the ordinary course of business.

30. Starting at the end of July 2007, Defendant failed to provide Plaintiff with the weekly and monthly financial reports that Defendant had been providing to Plaintiff since execution of the APA.

31. Defendant has also failed to provide information requested by Plaintiff concerning employees who have left the Stations since October 31, 2006, new employees who have been hired by the Stations since October 31, 2006, and employees who have been transferred to other stations within the Clear Channel system since October 31, 2006.

32. In Section 5.2 of the APA, the parties covenanted with each other as follows:

<u>Announcements</u>. Prior to Closing, no party shall, without the prior written consent of the other, issue any press release or make any other public announcement concerning the transactions contemplated by this Agreement, except to the extent that such party is so obligated by law, in which case such party shall give advance notice to the other, and except that the parties shall cooperate to make a mutually agreeable announcement.

33. On August 17, 2007, in an attempt to deflect attention from its own mismanagement and breaches of the APA, Defendant filed a petition against Plaintiff and other parties in state court in Bexar County, Texas, falsely alleging that Plaintiff had breached the APA and that Plaintiff and other parties had committed several torts relating to the APA and transactions contemplated by the APA.

34. The petition in Bexar County was publicly filed.

35. Upon information and belief, Defendant did not make any attempt to file the petition in Bexar County under seal (as Plaintiff did when it filed this lawsuit against Defendant in New York state court), even though the APA required it to do so.

36. Defendant publicly filed its false allegations against Plaintiff in order to embarrass and disparage Plaintiff and Plaintiff's affiliates and with the intent that the false allegations would be publicly disseminated by Defendant and its agents and by the press. In failing to attempt to file its petition under seal, Defendant essentially used the Texas court as a vehicle to disseminate false and disparaging allegations against Plaintiff and Plaintiff's affiliates under the guise of a court pleading. The false allegations were designed to harm, and have harmed, the business and personal reputations of Plaintiff and Plaintiff's affiliates among, <u>inter alia</u>, the private equity community, investment banking community and financial lenders to Plaintiff and Plaintiff's affiliates.

37.     Defendant failed to give Plaintiff advance notice that Defendant was going to file its petition publicly in Bexar County, even though the APA required Defendant to do so.

38.     Employees and representatives of Defendant directly and publicly disseminated, to persons and entities outside Defendant, the false and disparaging information about Plaintiff and Plaintiff's affiliates.

39.     For example, Inside Radio, which is ultimately owned by the same corporate parent that owns Defendant, began as early as August 22, 2007, to publicize the false allegations against Plaintiff and Plaintiff's affiliates.

40.     On August 22, 2007, Inside Radio published the following under the headline "Clear Channel won't let Frequency License LLC renegotiate its deal":

> Clear Channel is fighting an attempt by Frequency to sweeten its $452 million deal to buy 187 stations across 36 markets. The American Securities Capital-backed group formerly headed by Dean Goodman has been trying to renegotiate for months. But Clear Channel is standing firm. Now both companies have filed lawsuits against the other. Even so Clear Channel tells managers in a memo "the sale agreement has not been terminated."

41.     On August 23, 2007, Inside Radio published the following under the headline "Inside the legal fight—Frequency tried to shave $102 million from its Clear Channel deal":

> Frequency License LLC—the American Securities Capital-backed group—agreed to pay $452.1 million to buy 187 stations across 36 markets last April. Following the exit of Dean Goodman, American Securities brought Connoisseur Media CEO Jeff Warshaw onboard as a consultant. By July 19 when Warshaw and Clear Channel CEO Mark Mays had a phone conversation, American Securities decided it wanted a 23% reduction in its purchase price. Instead of $452.1 million it was pushing for a $350 million price tag. Not surprisingly, Mays refused. Five days later American Securities warned Clear Channel it was violating the terms of their contract. Clear Channel's response was a demand that

Frequency give them a guarantee they were moving forward with the $452.1 million deal as is within 20 days—or Clear Channel would go to court to terminate the contract and keep the $20.3 million deposit. Frequency refused and that led to Clear Channel's suit filed Friday in Texas District Court. It charges American Securities, Frequency and Warshaw with breach of contract, fraud and interfering with Clear Channel's business since it stopped negotiating with other potential bidders after it struck a deal with them. Frequency filed its own suit in New York State Supreme Court on Monday, but under interstate rules the Texas case must be resolved first. Frequency is asking the court to dissolve the contract and award it damages, or at the very least limit Clear Channel to getting just the $20.3 million deposit.

42.    Under the APA, in the event that Defendant materially breaches any of its representations, warranties or covenants, Plaintiff is entitled, after providing proper notice to Defendant, to terminate the APA and recover its Deposit.

43.    Section 10.1(b) of the APA provides as follows:

Subject to Section 10.3, this Agreement may be terminated prior to Closing . . . (b) by written notice of Buyer to Seller if Seller breaches its representations or warranties or defaults in the performance of its covenants contained in this Agreement and such breach or default is material in the context of the transactions contemplated hereby and is not cured within the Cure Period (defined below).

44.    Section 10.2 of the APA provides as follows:

Cure Period. Each party shall give the other party prompt written notice upon learning of any breach or default by the other party under this Agreement. The term "Cure Period" as used herein means a period commencing on the date Buyer or Seller receives from the other written notice of breach or default hereunder and continuing until the earlier of (i) twenty (20) calendar days thereafter or (ii) the Closing Date determined under Section 1.9; provided, however, that if the breach or default is non-monetary and cannot reasonably be cured within such period but can be cured before the Closing Date determined under Section 1.9, and if diligent efforts to cure promptly commence, then the Cure Period shall continue as long as such diligent efforts continue, but not beyond the Closing Date determined under Section 1.9.

45.    Upon termination of the APA pursuant to Section 10.1(b), Section 1.6 of the APA provides that Plaintiff is entitled to the return of its Deposit, that

Defendant is obligated to "instruct the Escrow Agent to disburse the Deposit and all interest thereon" to Plaintiff and that Defendant "shall not, by any act or omission, delay or prevent any such disbursement".

46. On July 24, 2007, Plaintiff sent Defendant a "NOTICE OF BREACH AND DEFAULT" pursuant to Section 10.1(b) and Section 10.2 of the APA ("Buyer's Notice"). (Exhibit B.)

47. In the Buyer's Notice, Plaintiff provided Defendant with notice that Defendant had materially breached Section 2.15 and Section 4.1(a) of the APA by providing Plaintiff with materially false financial statements in breach of Section 2.15 and by operating the stations to be transferred to Plaintiff under the APA in a manner inconsistent with past practices and ordinary course of business practices in breach of Section 2.15 and Section 4.1(a).

48. In the Buyer's Notice, Plaintiff stated: "Buyer reserves all of its rights under the Agreement in connection with the foregoing, including Buyer's rights set forth in Sections 7.1(a), 7.1(b) and 10.1(b)."

49. On July 27, 2007, Defendant sent Plaintiff a letter responding to the July 24, 2004 Buyer's Notice ("Seller's Response"), and claiming that Plaintiff had breached the APA. (Exhibit C.)

50. The Seller's Response claimed that "Clear Channel is not in breach or default of the APA".

51. The Seller's Response did not state that Defendant was making or would make any effort to cure the breaches identified in the Buyer's Notice.

52. On July 31, 2007, Plaintiff sent Defendant a letter in response to the Seller's Response, reiterating that Defendant had materially breached the APA. (Exhibit D.)

53. On August 23, 2007, Plaintiff sent Defendant a letter providing notice pursuant to Section 10.2 of the APA that Defendant had materially breached Section 4.1(e) of the APA by failing to provide Plaintiff with requested information concerning new and departed employees and by failing to provide Plaintiff with Defendant's weekly and monthly financial reports. (Exhibit E.)

54. In its August 23, 2007 letter, Plaintiff also provided Defendant with notice that Defendant had materially breached Section 5.2 of the APA by failing to file the Texas state court lawsuit under seal (or attempt to file it under seal or give notice to Plaintiff that the lawsuit would be publicly filed) as required by Section 5.2 of the APA. (Exhibit E.)

55. On August 30, 2007, Defendant sent Plaintiff a letter responding to Plaintiff's August 23, 2007 letter. Defendant's letter purported to express "surprise[] by the request for information" in the August 23, 2007, letter. (Exhibit F.) Defendant failed to provide any information requested in Plaintiff's August 23, 2007, letter. Nor did Defendant state that it was making or would make any effort to cure the breaches identified in the August 23, 2007 letter. Nor did Defendant explain why it had not filed its Texas state court lawsuit under seal.

56. The twenty-day cure period under Section 10.2 of the APA for Defendant's material breaches of Section 2.15 and Section 4.1(a) expired on August 13, 2007.

57. The twenty-day cure period under Section 10.2 of the APA for Defendant's material breaches of Section 4.1(e) and Section 5.2 expired on September 12, 2007.

58. Defendant did not make any effort to cure its material breaches of the APA.

59. Accordingly, on September 12, 2007, Plaintiff sent Defendant a notice of termination pursuant to Section 10.1(b) of the APA and requested that Defendant execute by September 13, 2007, written instructions to the Escrow Agent to disburse the Deposit to Plaintiff. (Exhibit G.)

60. On September 13, 2007, Defendant sent Plaintiff a letter refusing to direct the Escrow Agent to release the Deposit to Plaintiff, and instead directed the Escrow Agent to retain the Deposit. (Exhibit H.)

61. Defendant has alleged that Plaintiff has breached the APA and that Defendant is entitled to recover damages beyond the Deposit amount of $20,344,500.

62. Even if Plaintiff has breached the APA (and Plaintiff has not), the contract expressly limits Defendant's remedy to, at most, termination of the contract and recovery of some or all of the Deposit.

### FIRST CLAIM FOR RELIEF

#### Breach of Contract

63. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 through 62 herein.

64. The APA between Plaintiff and Defendant constitutes a valid and binding agreement.

65. Defendant has materially breached Section 2.15, Section 4.1(a), Section 4.1(e) and Section 5.2 of the APA.

66. Defendant has materially breached Section 2.15 of the APA by providing Plaintiff with materially false financial statements that do not "present fairly in all material respects the results of operations of the Stations as operated by Seller".

67. Defendant has materially breached Section 2.15 of the APA by, during the period from March 31, 2007, to April 30, 2007, mismanaging the stations to be transferred to Plaintiff by operating them in a manner inconsistent with past practices and ordinary course of business practices, including but not limited to materially reducing marketing and promotion expenditures for the stations, failing to keep or replace key employees at the stations and materially reducing capital expenditures for the stations.

68. Defendant has materially breached Section 4.1(a) of the APA by, during the period from April 30, 2007, to the date of this Complaint, mismanaging the stations to be transferred to Plaintiff by operating them in a manner inconsistent with past practices and ordinary course of business practices, including but not limited to materially reducing marketing and promotion expenditures for the stations, failing to keep or replace key employees at the stations and materially reducing capital expenditures for the stations.

69. Defendant has materially breached Section 4.1(e) of the APA by failing to provide Plaintiff with requested information concerning new and departed employees and by failing to provide Plaintiff with Defendant's weekly and monthly financial reports.

70. Defendant has materially breached Section 5.2 of the APA by publicly filing its petition in Texas state court and by not filing its petition under seal (or attempting to file it under seal or giving notice to Plaintiff that the lawsuit would be publicly filed). Defendant did so in order to embarrass and disparage Plaintiff and Plaintiff's affiliates through the false allegations that are contained in its petition and with the intent that those false allegations would be publicly disseminated by Defendant and its agents and by the press. In failing to attempt to file its petition under seal, Defendant essentially used the Texas court as a vehicle to disseminate false and disparaging allegations against Plaintiff and Plaintiff's affiliates under the guise of a court pleading. The false allegations were designed to harm, and have harmed, the business and personal reputations of Plaintiff and Plaintiff's affiliates among, inter alia, the private equity community, investment banking community and financial lenders to Plaintiff and Plaintiff's affiliates.

71. Defendant's breaches, individually or aggregated in whole or in part, constitute a material breach of the APA.

72. As a result of Defendant's material breaches, the value of the assets subject to the APA has been substantially impaired since execution of the contract.

73. In light of the foregoing, the APA should be rescinded and Plaintiff awarded all damages flowing therefrom.

SECOND CLAIM FOR RELIEF

Declaratory Judgment

74. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 through 62 herein.

75. The APA between Plaintiff and Defendant constitutes a valid and binding agreement.

76. Defendant has materially breached Section 2.15, Section 4.1(a), Section 4.1(e) and Section 5.2 of the APA.

77. Defendant has materially breached Section 2.15 of the APA by providing Plaintiff with materially false financial statements that do not "present fairly in all material respects the results of operations of the Stations as operated by Seller".

78. Defendant has materially breached Section 2.15 of the APA by, during the period from March 31, 2007, to April 30, 2007, mismanaging the stations to be transferred to Plaintiff by operating them in a manner inconsistent with past practices and ordinary course of business practices, including but not limited to materially reducing marketing and promotion expenditures for the stations, failing to keep or replace key employees at the stations and materially reducing capital expenditures at the stations.

79. Defendant has materially breached Section 4.1(a) of the APA by, during the period from April 30, 2007, to the date of this Complaint, mismanaging the stations to be transferred to Plaintiff by operating them in a manner inconsistent with past practices and ordinary course of business practices, including but not limited to materially reducing marketing and promotion expenditures for the stations, failing to keep or replace key employees at the stations and materially reducing capital expenditures at the stations.

80. Defendant has materially breached Section 4.1(e) of the APA by failing to provide Plaintiff with requested information concerning new and departed

employees and by failing to provide Plaintiff with Defendant's weekly and monthly financial reports

81. Defendant has materially breached Section 5.2 of the APA by publicly filing its petition in Texas state court and by not filing its petition under seal (or attempting to file it under seal or giving notice to Plaintiff that the lawsuit would be publicly filed). Defendant did so in order to embarrass and disparage Plaintiff and Plaintiff's affiliates through the false allegations that are contained in its petition, and with the intent that those false allegations would be publicly disseminated by Defendant and its agents and by the press. In failing to attempt to file its petition under seal, Defendant essentially used the Texas court as a vehicle to disseminate false and disparaging allegations against Plaintiff and Plaintiff's affiliates under the guise of a court pleading. The false allegations were designed to harm, and have harmed, the business and personal reputations of Plaintiff and Plaintiff's affiliates among, inter alia, the private equity community, investment banking community and financial lenders to Plaintiff and Plaintiff's affiliates.

82. Defendant's breaches, individually or aggregated in whole or in part, constitute a material breach of the APA.

83. As a result of Defendant's material breaches, the value of the assets subject to the APA has been substantially impaired since execution of the contract.

84. Plaintiff has provided Defendant with the required notices of breach pursuant to Section 10.2 of the APA.

85. Defendant failed to cure its material breaches or to commence any efforts to cure its material breaches.

86.  Accordingly, on September 12, 2007, Plaintiff terminated the contract pursuant to Section 10.1(b) of the APA and requested that Defendant execute by September 13, 2007, written instructions to the Escrow Agent to disburse the Deposit to Plaintiff.

87.  Defendant refused to execute such written instructions to the Escrow Agent and instead directed the Escrow Agent to retain the Deposit.

88.  Defendant's refusal to execute written instructions to the Escrow Agent to disburse the Deposit to Plaintiff is a breach of Section 1.6 of the APA, which survives termination of the contract.

89.  Plaintiff is entitled to a declaration that Defendant is obligated, pursuant to Section 1.6 of the APA, to "instruct the Escrow Agent to disburse the Deposit and all interest thereon" to Plaintiff.

THIRD CLAIM FOR RELIEF

Declaratory Judgment

90.  Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 through 62 herein.

91.  Defendant has taken the position that, as a result of Plaintiff's conduct, Defendant is entitled to a remedy beyond recovery of the Deposit amount of $20,344,500.

92.  The APA limits Defendant's remedy to, at most, termination of the contract and recovery of some or all of the Deposit.

93.  Plaintiff is entitled to a declaration that Defendant's sole remedy under the APA, should Defendant establish that Plaintiff has breached the contract, is termination of the contract and recovery of some or all of the Deposit.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Defendant as follows:

(a) that the Court declare that Defendant has materially breached the APA;

(b) that the Court declare that Plaintiff is entitled to recover its Deposit in full and that Defendant is obligated to instruct the Escrow Agent to disburse the Deposit and all interest thereon to Plaintiff;

(c) that Defendant's sole remedy under the APA for any alleged breach of the APA by Plaintiff is termination of the contract and recovery of some or all of the Deposit; and

(d) that the Court award Plaintiff such other and further relief as the Court deems just and proper, including attorneys fees.

Dated: October 1, 2007

CRAVATH, SWAINE & MOORE LLP

by _____
Max R. Shulman
Michael T. Reynolds
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Attorneys for Plaintiff