UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FREQUENCY, LLC (f/k/a GOODRADIO.TX, LLC), INC.

    Plaintiff,

v.

CLEAR CHANNEL BROADCASTING, INC.,

    Defendant.

No. 07-CIV-7785 (PKC)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR STAY

AKIN GUMP STRAUSS HAUER
   & FELD LLP
R. Laurence Macon
300 Convent Street, Suite 1600
San Antonio, Texas 78205
Telephone:   (210) 281-7000
Fax:   (210) 224-2035
lmacon@akingump.com

Ariane A. Qureshi
590 Madison Avenue
New York, NY 10022-2525
Telephone:   (212) 872-1000
Fax:   (212) 872-1002
aaustin@akingump.com

*Attorneys for Defendant*
*Clear Channel Broadcasting, Inc.*

## TABLE OF CONTENTS

Page(s)

I. Introduction..........................................................................................................................1

II. Factual Background ............................................................................................................2

III. Argument and Authorities...................................................................................................4

    A. The New York Lawsuit should be dismissed because Frequency consented to venue and personal jurisdiction in Bexar County, Texas. ..............................5

    B. The New York Lawsuit should be dismissed under the *Colorado River* doctrine. .................................................................................................................5

    C. Alternatively, the Court should stay the New York Lawsuit pursuant to *Guilini v. Blessing*. ..................................................................................................9

    D. Alternatively, the Court should dismiss this case under the first-filed rule. ..........11

        1. The first-filed rule prevents this Court from retaining jurisdiction. ..........11

        2. Alternatively, the Court should stay this lawsuit until the Texas Lawsuit is concluded.................................................................................13

    E. Frequency's declaratory judgment claims are improper and must be dismissed...............................................................................................................14

IV. Conclusion .........................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                            **Page(s)**

*800-Flowers, Inc. v. Intercontential Florist, Inc.*, 860 F. Sup. 128, 131 (SDNY 1994) ..........................................................................................................11

*Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991) .........................................................................11

Alameda Room, Inc. v. Pitta, 538 F. Sup. 1072, 1077 (SDNY 1982) ...................................9

*Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549 (SDNY 2005) ........................14, 15

*Arkwright-Boston Manufs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985) ...............................................................................................................................6

*Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989) ............................................................7, 8

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) .......................................................................................... 5-7, 9, 15

*Computer Assocs. Int'l, Inc. v. Elec. Data Sys. Corp.*, 816 F. Supp. 845 (EDNY 1993) .............................................................................................................................14

*First City National Bank & Trust*, 878 F.2d 76, 80 (2d Cir. 1989) ....................................13

Goldentree Asset Mgt., L.P. v. Longaberger Co., 448 F. Supp. 2d 589 (SDNY 2006) ............................................................................................................................6, 8

*Guilina v. Blessing*, 654 F.2nd 189 (2d Cir. 1981) ................................................................9

*Invivo Research, Inc. v. Magnetic Resonance Equipment Corp.*, 119 F. Supp. 2d 433 (SDNY 2000) .........................................................................................................13

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952) ................................11

*MSK Ins., Ltd., v. Employers Reinsurance Corp.*, 212 F. Supp. 2d 266 (SDNY 2002) .......................................................................................................................13, 14

*Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424 n.4 (2d Cir. 1965) ...........................12

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .........................6

*Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230 (SDNY 1993) .......................................................................................................................8, 10

*Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49 (SDNY 2001), *quoting 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128 (SDNY 1994) .......................................................................................................................11, 13

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970) .................. 11

*Staley Elevator Co. v. Otis Elevator Co.*, 35 F. Supp. 778 (N.J. 1940) .................. 15

*Tarka v. Greenfield, Stein & Senior, LLP*, No. 00 Civ. 1262 (SAS), 2000 WL. 1121557 (SDNY Aug. 8, 2000) .................. 7

*Ulico*, 2007 WL. 2265563 (citations and quotations omitted) .................. 6, 9, 10

*Ulico Cas. Co. v. Cox Mech. Contracting Inc.*, No. 04 Civ. 6185 (MHD), 2007 WL. 2265563 (SDNY Aug. 2, 2007) .................. 5

*Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999) .................. 8

*Western Supplies Co. v. Freeman*, 109 F.2d 693 (6th Cir. 1940) .................. 14

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137 (1995) .................. 14

*Woodford v. Community Action Agency of Green County, Inc.*, 239 F.3d 517 (2d Cir. 2001) .................. 7

## I. Introduction

This lawsuit is a clear-cut case of procedural gamesmanship by Plaintiff Frequency, LLC ("Frequency") designed to deprive Defendant Clear Channel Broadcasting, Inc. ("Clear Channel") of its contractual rights and its choice of venue. On April 30, 2007, Frequency signed an Asset Purchase Agreement ("APA") agreeing to purchase 187 radio stations from Clear Chanel for $452.1 million. Less than four months later, Frequency breached the APA when it refused to pay Clear Channel the agreed purchase price. Clear Channel initiated a lawsuit against Frequency and others in San Antonio, Texas – *Clear Channel Broadcasting, Inc., et al. v. Frequency, LLC, et al.*, Case No. 2007-CI-12493, in the 288th District Court, Bexar County, Texas (the "Texas Lawsuit"). The lawsuit was filed in Bexar County, Texas in accordance with the agreed forum selection provision contained in a Confidentiality Agreement that was assumed by the parties to the APA, including Frequency. Rather than defending the Texas Lawsuit on the merits, Frequency filed this competing breach of contract and declaratory judgment action (the "New York Lawsuit") for the sole purpose of trying to preempt the Texas Lawsuit. The New York Lawsuit should be dismissed for the following reasons: (1) Frequency consented to venue and jurisdiction in Bexar County, Texas; (2) the *Colorado River Doctrine* requires this Court to abstain from hearing the New York Lawsuit; and (3) the New York Lawsuit should be dismissed under the first-filed rule. In the alternative, this matter should be stayed until the Texas Lawsuit is concluded.

## II. Factual Background

In January 2006, Clear Channel established an auction to sell radio stations in 91 markets.[1] Dozens of bidders responded to the auction, including Frequency.[2] On April 30, 2007, Frequency entered into the APA with Clear Channel and eight others sellers[3] to buy 187 radio stations in 36 of the 91 markets for $452.1 million.[4] In reliance on Frequency's agreement to purchase the 187 stations, Clear Channel withdrew the remaining stations from the auction and from potential sale.[5]

On May 11, 2007, Frequency assigned its rights under the APA to another Delaware limited liability company called Frequency License, LLC ("Frequency License").[6] Frequency License is a party to the Texas Lawsuit but is not a party to the New York Lawsuit.[7] Clear Channel believes that these limited liability companies were created by a third entity, American Securities Capital Partners, LLC ("ASCP"), to serve as ASCP's acquisition companies. ASCP is funding Frequency's purchase of the radio stations from Clear Channel, and officers and directors of ASCP appear to be directly involved in the day-to-day management of Frequency

---

[1] *See Declaration of Dirk G. Eller in Support of Defendant's Motion to Dismiss or in the Alternative, Stay* ("Eller Declaration") at ¶ 3.

[2] *Id.* at ¶ 4.

[3] The other parties to the APA are: Clear Channel Broadcasting Licenses, Inc.; CC Licenses; LLC, Capstar Radio Operating Co.; Capstar TX Limited Partnership; AMFM Radio Licenses, LLC; and Jacor Broadcasting Corporation. Each of these sellers is a party plaintiff to the Texas Lawsuit. They have not been sued in the New York Lawsuit.

[4] Eller Declaration at ¶ 4.

[5] *Id.* at ¶ 5.

[6] *Id.* at ¶ 6.

[7] *See* ¶ 12 of *Plaintiff's Original Petition* filed by Clear Channel in the Texas Lawsuit ("Original Petition"), attached as Exhibit 1 to the accompanying Declaration of Melanie G. Cowart in Support of Defendant's Motion to Dismiss or in the Alternative, Stay ("Cowart Declaration:").

2

and Frequency License.[8]  ASCP is also a party to the Texas Lawsuit but not the New York Lawsuit.[9]

On July 19, 2007, Clear Channel's CEO, Mark Mays, was contacted by Jeffrey Warshaw, a consultant hired by Frequency/ASCP.[10]  Mr. Warshaw is the CEO of Connoisseur Media, Inc., a Clear Channel competitor.[11]  During their discussion, Mr. Warshaw told Mr. Mays that his clients, Frequency and ASCP, were not going to pay Clear Channel the agreed upon purchase price for the radio stations being acquired.[12]  Mr. Mays responded that he expected Frequency and ASCP to abide by the agreement.[13]

Since the July 19, 2007 teleconference between Mr. Warshaw and Mr. Mays wherein Mr. Warshaw stated that Frequency and ASCP were not going to pay the agreed purchase price, Frequency's mission has been to find a way to unwind and renege on its agreement with Clear Channel.  When Frequency failed and refused to give Clear Channel assurance that the agreed upon purchase price would be paid, Clear Channel filed the Texas Lawsuit to preserve its contractual and legal rights.[14]

The Texas Lawsuit was filed on Friday, August 17, 2007.[15]  That same day, Clear Channel's Executive Vice President and Chief Legal Officer Andrew W. Levin emailed Frequency and ASCP a copy of the petition from the Texas Lawsuit to place them on notice of

---

[8] Eller Declaration at ¶ 7.

[9] Cowart Declaration, Ex. 1 at ¶ 13.

[10] Eller Declaration at ¶ 11.

[11] Id.

[12] Id.

[13] Id.

[14] See Declaration of Andrew W. Levin in Support of Defendant's Motion to Dismiss or in the Alternative, Stay ("Levin Declaration") at ¶ 3.

[15] Id. at ¶ 3.

3

the Texas Lawsuit.[16] Three days later, on Monday, August 20, 2007, Frequency filed the instant breach of contract and declaratory judgment suit in New York state court.[17] On August 31, 2007, Clear Channel filed its notice of removal to this Court.[18]

The Texas forum is proper pursuant to the parties' agreement.[19] Further, the allegations raised by Frequency in the New York Lawsuit – whether there has been a breach of the APA, and whether Frequency is entitled to the return of any of its $20 million deposit – either correspond to or are identical to issues to be tried in the Texas Lawsuit.[20] In addition, all the parties necessary for a full and complete adjudication of the parties' dispute are before the Texas court.[21] Therefore, the New York Lawsuit should be dismissed or stayed pending the outcome of the Texas action.

### III. Argument and Authorities

At the time it filed the New York Lawsuit, Frequency knew it had already breached the APA by refusing to pay the agreed purchase price. Frequency knew it had already been sued in Bexar County, Texas for that breach. Frequency knew the Texas Lawsuit was pending, and that it had a ready forum for whatever defenses and counterclaims it may have wanted to assert. Moreover, Frequency consented to personal jurisdiction in the Texas court and agreed that Texas was a convenient forum. This lawsuit represents nothing more than Frequency's overt attempt at

---

[16] *Id.* at ¶ 4.

[17] *Id.* at ¶ 5

[18] Since the initial filing of both the Texas and New York lawsuits, the plaintiffs in each case have amended their pleadings to add additional claims of breach against the other. However, all of the claims are governed by the forum selection and choice of law provisions contained in the APA and a November 30, 2006 Confidentiality Agreement that was assumed by the parties to the APA.

[19] *See Confidentiality Agreement of November 30, 2006* ("Confidentiality Agreement"), Cowart Declaration, Ex. 2 at ¶ 12; *Id.*, Ex. 1 at Ex. A (the Asset Purchase Agreement), art. 5.1.

[20] Cowart Declaration, Ex.1.

[21] *Id.*

forum shopping. Therefore, the Court should give deference to Clear Channel's choice of forum and dismiss or stay the New York Lawsuit until the Texas Lawsuit is concluded.

### A. *The New York Lawsuit should be dismissed because Frequency consented to venue and personal jurisdiction in Bexar County, Texas.*

On November 30, 2006, a Confidentiality Agreement was executed regarding the sale of Clear Channel's radio stations  The Confidentiality Agreement contains the following forum selection provision:

> 12. Any action, suit or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the Transaction contemplated hereby may be brought in any state or federal court located in Bexar County, Texas, and you consent to the non-exclusive jurisdiction and venue of such courts (and of the appropriate appellate courts therefrom) in any such action, suit, or proceeding and irrevocably waive, to the fullest extent permitted by law, any objection that you may now or hereafter have to the laying of the venue of any such action, suit or proceeding in any such court or that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.[22]

In Article 5.1 of the APA, Frequency expressly assumed the terms of the Confidentiality Agreement and agreed to be bound by those terms.[23] Thus, Frequency has consented to the personal jurisdiction of Bexar County, Texas state and federal courts and has expressly agreed that this dispute should be litigated in Bexar County District Court, venue of the Texas Lawsuit. For this reason alone, the New York Lawsuit should be dismissed.

### B. *The New York Lawsuit should be dismissed under the Colorado River doctrine.*[24]

The *Colorado River* abstention analysis supports dismissal or, at a minimum, the issuance of a stay in this case.[25] In *Colorado River*, the Supreme Court ruled that "a district court may

---

[22] Cowart Declaration, Ex. 2 at ¶ 12.

[23] Cowart Declaration, Ex. 1 at Ex. A, art.5.1.

[24] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

abstain from exercising its authority when a state forum has concurrent jurisdiction, and when wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation counsels such abstention."[26] Thus, "[w]hen parallel state court proceedings exist and exceptional circumstances warrant, a federal district court may decline to exercise its jurisdiction over a particular matter."[27]

To determine if a federal court should abstain when there are concurrent state and federal actions, the courts perform a balancing test by weighing those factors suggested by *Colorado River* and *Moses H. Cone Memorial Hospital*.[28] Those factors are: "(1) whether either court has assumed jurisdiction over any res; (2) whether the federal forum is inconvenient and to what degree; (3) whether abstention would avoid piecemeal litigation; (4) whether state or federal jurisdiction enjoyed chronological precedence; (5) whether state or federal law controls the decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction."[29] No single factor is determinative, as the weighting of factors varies from case to case.[30]

The most important factor in the *Colorado River* analysis is the avoidance of piecemeal litigation.[31] Piecemeal litigation may exist when different claims arise out of the same set of events being litigated in parallel lawsuits.[32] Piecemeal litigation also results when there are

---

[25] *See Ulico Cas. Co. v. Cox Mech. Contracting Inc.*, No. 04 Civ. 6185 (MHD), 2007 WL 2265563 at *5 (SDNY Aug. 2, 2007) (slip. op.) (explaining that the court should address the abstention criteria when a party moves for a dismissal or stay pending a decision by a state court in a parallel proceeding).

[26] *Arkwright-Boston Manufs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985) (citation and quotation omitted).

[27] *Goldentree Asset Mgt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 593 (SDNY 2006).

[28] *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

[29] *Ulico*, 2007 WL 2265563 at *6 (citations and quotations omitted).

[30] *Id.*

[31] *See Moses H. Cone*, 460 U.S. at 16; *Ulico*, 2007 WL 2265563 at *6 (citing *Goldentree Asset Mgt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 594 (SDNY 2006)).

[32] *Id.*

additional parties in one litigation, but not the parallel proceeding.[33] Here, allowing the New York Lawsuit to proceed would result in piecemeal litigation. Not all of the parties to the Texas Lawsuit are before this Court. Frequency, the sole plaintiff here, has only named Clear Channel Broadcasting, Inc., as a defendant. In contrast, in the Texas Litigation, all of the Clear Channel entities, who are the owners of the assets being conveyed under the APA,[34] are party plaintiffs. Further, in addition to its breach of contract claims against Frequency, Clear Channel has asserted different claims against three other defendants in the Texas Lawsuit: Frequency License, LLC; American Securities Capital Partners; and Jeffrey Warshaw. Construction of the APA and which party or parties breached the APA are central issues in both lawsuits and if tried in different courts, could result in inconsistent outcomes.[35] For example, parallel state and federal lawsuits could result in inconsistent adjudications on which party breached the APA. Such contradictory findings of liability "would cause friction between state and federal courts."[36] Thus, where the state and federal issues are "'inextricably linked,' the risk of [piecemeal] adjudication is real."[37] In sum, the avoidance of piecemeal litigation weighs heavily in favor of abstention.

The second *Colorado River* factor, whether the federal forum is inconvenient, also weighs strongly in favor of abstention in this case. The forum selection provision in the parties'

---

[33] *Tarka v. Greenfield, Stein & Senior, LLP*, No. 00 Civ. 1262 (SAS), 2000 WL 1121557 at *5 (SDNY Aug. 8, 2000).

[34] *See* Cowart Declaration, Ex. 1 at Ex. A, first paragraph, describing the "Seller" collectively as "the company or companies set forth as Seller on the signature page," and the nine different entities listed as "Seller" on the signature page.

[35] *See Woodford v. Community Action Agency of Green County, Inc.*, 239 F.3d 517, 524 (2d Cir. 2001) (noting court has often affirmed *Colorado River* abstention to avoid piecemeal adjudication where there is risk of inconsistent outcomes not preventable by res judicata and collateral estoppel, as when not all potentially liable defendants are present in both cases).

[36] *Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989) (quotation omitted).

Confidentiality Agreement expressly states that Texas is a convenient forum.[38] A forum selection clause is determinative of the convenience of the parties.[39] On the other hand, New York is an inconvenient forum for Clear Channel. Clear Channel is headquartered in Bexar County, Texas. The majority of the documents and the witnesses to be deposed in connection with the parties' claims are located in Texas.

The fifth factor, which state-law controls the decision, also favors abstention. The only claims in this lawsuit are state law contract and tort claims. There are no federal questions. Further, the parties agreed in the choice-of-law provisions in the Confidentiality Agreement and the APA that Texas law would apply.[40] Thus, this factor favors abstention.[41]

Finally, the court must consider the adequacy of the state court proceedings to protect the interests of the party invoking federal jurisdiction. In analyzing this factor, the court determines "whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."[42] Here, all of the claims by both parties are state-law claims. Frequency has already agreed that Texas law and the Texas forum will apply to its claims, as they all arise under the contract.[43] The Texas court will resolve all claims in the litigation. Neither lawsuit has progressed past the initial stages. Thus, there is no reason to

---

[37] *Id.*

[38] Cowart Declaration, Ex. 2 at ¶ 12.

[39] *Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230, 234 (SDNY 1993).

[40] *See* Cowart Declaration, Ex. 2 at ¶ 13; *Id.*, Ex. 1 at Ex. A, art. 11.9.

[41] *See Cisneros*, 871 F.2d at 308-09 (although lack of federal issues does not require surrender of jurisdiction, abstention is favored where bulk of litigation revolves around state-law claims); *Goldentree*, 448 F. Supp. 2d at 594.

[42] *Village of Westfield v. Welch's*, 170 F.3d 116, 124 (2d Cir. 1999) (quotation omitted).

[43] *See Goldentree*, 448 F. Supp. 2d at 594 (holding sixth factor weighed in favor of abstention where party opposing abstention had "implicitly demonstrated their belief in the adequacy of the Ohio court to protect its rights" by asserting a counterclaim in the state court).

8

believe the Texas court will not resolve the litigation promptly and completely. Therefore, this factor, too, favors abstention.

In sum, by far the most important (third) factor, to avoid piecemeal or duplicative litigation, favors abstention, as do the second (convenience), fifth (state law controls decision) and sixth factors (adequacy of state court proceedings). The remaining two factors are neutral, thus failing to tip the scale in favor of retention. Balancing the various *Colorado River* factors, the Court should abstain and dismiss the New York Lawsuit.

### C. Alternatively, the Court should stay the New York Lawsuit pursuant to *Guilini v. Blessing*.[44]

This Court has the discretion to stay a proceeding pending resolution of a parallel state-court action.[45] Such a stay is concerned with "avoiding wasteful duplication of judicial resources and having the benefit of the state court's views."[46] The Court determines whether a stay is appropriate by considering seven factors: "(1) identity of parties and issues in both actions; (2) considerations of comity; (3) promotion of judicial efficiency; (4) adequacy and extent of relief available in the alternative forum; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel, and witnesses; and (7) possibility of prejudice to a party as a result of the stay."[47]

The first factor weighs in favor of a stay. All the parties in the New York Lawsuit are before the court in the Texas Lawsuit. In fact, necessary parties to the contract claims are parties

---

[44] 654 F.2d 189 (2d Cir. 1981).

[45] *Id.* at 193.

[46] *Id.*

[47] *Ulico*, 2007 WL 2265563 at *5 (SDNY Aug. 2, 2007) (slip. op.) (citing *Alameda Room, Inc. v. Pitta*, 538 F. Supp. 1072, 1077 (SDNY 1982)).

to the Texas Lawsuit but have not been joined in the New York case.[48] Moreover, "formal symmetry is not required for the conclusion that actions are concurrent."[49] The legal issues in both cases arise out of the same contractual relationships and the parties' claims are the same: whether there has been a breach of the APA, whether the APA has been terminated, and whether Frequency is entitled to a return of its $20 million deposit.

As for issues of comity and convenience, the parties expressly agreed in the Confidentiality Agreement that Texas is a convenient forum.[50] Further, there can be no dispute that judicial efficiency will be enhanced by allowing the litigation to proceed in the Texas court, because "judicial efficiency would be disserved by having two judges simultaneously adjudicate the identical issues."[51] Moreover, the extent of the relief available in the Texas forum exceeds that of this forum. All of Frequency's claims may be brought in the Texas court, and all relevant parties to the Transaction are before the Texas court, but not before this Court. Allowing the New York Lawsuit to proceed would result in piecemeal litigation, as only some of the claims and parties are present here. In fact, all claims between the parties will be resolved by the Texas court, as the issues are strictly state-law claims, so the parties' dispute will be adjudicated fully and completely by the Texas litigation. Finally, there is no indication that Frequency will suffer prejudice by this Court staying the New York Lawsuit.

In sum, a stay in this case will allow the parties to adjudicate all of their claims in the Texas court, in the forum of their choosing, under their choice of Texas law, and the interests of judicial efficiency will be served.

---

[48] *See* n.3 *supra*.

[49] *Ulico*, 2007 WL 2265563 at *5

[50] *See Orix*, 816 F. Supp. at 234.

[51] *Id.* (quotation omitted).

### D. Alternatively, the Court should dismiss this case under the first-filed rule.

The Court should dismiss this case for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because jurisdiction over the controversy attached in Texas before this action was filed. The decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion.[52] However, a district court may abuse its discretion when it refuses to stay or dismiss a duplicative suit.[53] Therefore, the propriety of a forum is a threshold matter that the Court must consider before addressing the merits of an action.[54] Clear Channel and Frequency have filed concurrent, competing lawsuits in different states. The parties to the New York Lawsuit are included in the Texas Lawsuit, and both lawsuits involve the same legal and factual issues. An analysis of the first-filed rule demonstrates that this case should be dismissed and that the dispute should be adjudicated in Texas.

### 1. The first-filed rule prevents this Court from retaining jurisdiction.

When two actions involving the same parties and issues are pending concurrently, courts in the Second Circuit follow the "'first-filed' rule whereby the court which first has possession of the action decides it."[55] The first-filed rule creates "a strong presumption" that the first-filed suit is the one that should proceed.[56] The presumption "may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action."[57] To rebut that presumption, the plaintiff bears the burden of demonstrating "special circumstances" giving priority to the second suit.[58]

---

[52] *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952).

[53] *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1204 (2d Cir. 1970).

[54] *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991).

[55] *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (SDNY 2001), *quoting 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (SDNY 1994).

[56] *Reliance*, 155 F. Supp. 2d at 54.

[57] *Id.*

[58] *Id.*

Two possible scenarios that warrant departure from the first-to-file rule are when (a) the first suit is brought against the customer of a patent infringer and the second suit is brought against the actual infringer and (b) where the first suit is motivated solely by forum shopping.[59] Neither of those circumstances exists here. Rather, Frequency's second filed suit was motivated by forum shopping alone.

Frequency received notice from Clear Channel on August 17, 2007 that a lawsuit had been filed in Texas in connection with Frequency's breach of the APA.[60] Instead of filing the appropriate answer, defenses and counterclaims in the Texas Lawsuit, Frequency filed this lawsuit three days later.[61] There is no need for two lawsuits involving the same parties and issues to proceed simultaneously in this instance. As noted previously, all the parties in the New York Lawsuit are before the court in the Texas Lawsuit. In fact, necessary parties to the contract claims are parties to the Texas Lawsuit but have not been joined in the New York case. Furthermore, the APA was negotiated in part in Texas,[62] representatives of Frequency and ASCP visited Texas during the due diligence and negotiation process,[63] the majority of the documents and people who will be deposed in connection with the parties' claims are located in Texas where Clear Channel is headquartered, and the construction and performance of the APA is governed by Texas law.[64]

---

[59] *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424 n.4 (2d Cir. 1965).
[60] Levin Declaration at ¶ 4.
[61] *Id.* at ¶ 5.
[62] Eller Declaration at ¶ 4.
[63] *Id.* at 8.
[64] Cowart Declaration, Ex. 1 at Ex. A, art. 11.9.

In *First City National Bank & Trust*,[65] the plaintiff bank filed suit against the defendants in New York for non-payment of a promissory note. The defendants moved to dismiss the New York lawsuit because a separate suit seeking recission of the parties' loan agreement had been earlier filed in Oklahoma. The district court dismissed the New York lawsuit and the bank appealed. The Second Circuit affirmed the dismissal stating that: "the decision to 'defer to the Oklahoma court' gives proper weight to the necessity of avoiding duplicative litigations, thereby conserving judicial resources." By dismissing Frequency's New York lawsuit in favor of the earlier filed Texas action, the Court will be conserving judicial resources and honoring Clear Channel's right to choose the forum in which to litigate its claims.

### 2. *Alternatively, the Court should stay this lawsuit until the Texas Lawsuit is concluded.*

If this Court is not inclined to dismiss the New York Lawsuit under the first-filed rule, it should stay the litigation until the Texas Lawsuit is concluded. This District follows the "bright-line rule . . . [that] . . . [t]he court before which the first-filed action was brought determines which forum will hear the case."[66] The Court in *MSK* noted that the few cases in which the "second-filed" complaint was filed in this District and the court made the determination as to which action would proceed "were not challenging the well-settled rule."[67] *MSK* reasoned that "the better rule is that which reserves the decision to the court that is . . . the first-filed forum . . . because it provides a bright-line division of labor among the federal courts, thereby avoiding duplicitous litigation and the possibility of inconsistent rulings, which are especially likely

---

[65] 878 F.2d 76, 80 (2d Cir. 1989).

[66] *MSK Ins., Ltd., v. Employers Reinsurance Corp.*, 212 F. Supp. 2d 266, 267 (SDNY 2002); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 n.2 (SDNY 2001); *Invivo Research, Inc. v. Magnetic Resonance Equipment Corp.*, 119 F. Supp. 2d 433, 440 (SDNY 2000).

[67] *MSK*, 212 F. Supp. 2d at 268 n.5.

where, as here, the district courts have been directed to avoid 'rigid mechanical solution[s]' and are endowed with an 'ample degree of discretion.'" *Id.* (citation omitted).

Even though the first-filed lawsuit in this instance was in Texas state court and not federal district court, the same logic behind the holding in *MSK* applies. By allowing the Texas Lawsuit to proceed to conclusion before considering the merits of New York case, this Court will avoid duplicitous litigation and the possibility of inconsistent rulings. Therefore, this Court should grant Clear Channel's motion to stay this action.

### E. *Frequency's* declaratory judgment claims are improper and must be dismissed.

This Court should not allow Frequency to use a request for declaratory relief as an instrument to interfere with another pending lawsuit.[68] Courts do not tolerate such "procedural fencing,"[69] and Courts have "substantial discretion" under the Declaratory Judgment Act to decline to entertain an action for declaratory relief.[70] A suit seeking a declaratory judgment involving the construction of a contract, which is the subject of a previously filed breach of contract action in another forum, should be dismissed.[71] Courts have long held that "a suit may not be maintained under the Declaratory Judgment Act when another suit between the same parties, involving the same subject matter, is pending in another court of competent jurisdiction and the parties are thereby enabled to procure a full and immediate adjudication of their rights."[72] The purpose of the Declaratory Judgment Act is to "allow a plaintiff not certain of his rights to

---

[68] *Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549, 551 (SDNY 2005) (dismissing declaratory judgment suit, reasoning that court "should be dubious of declaratory judgment actions when the plaintiff files suit to interfere with an action already filed").
[69] *Id.*
[70] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142 (1995).
[71] *Computer Assocs. Int'l, Inc. v. Elec. Data Sys. Corp.*, 816 F. Supp. 845 (EDNY 1993).
[72] *Western Supplies Co. v. Freeman*, 109 F.2d 693, 695 (6th Cir. 1940).

avoid accrual of avoidable damages and to afford him an early adjudication without waiting until his adversary should see fit to begin suit."[73] A New Jersey district court explained:

> It was never intended that the relief to be obtained under the Declaratory Judgment Act be exercised for the purpose of trying issues involved in cases already pending, especially where they can be tried with equal facility in such cases. The object of the statute is to afford a new form of relief where needed, not to furnish a new choice of tribunals.[74]

Here, Frequency was not waiting for Clear Channel to begin suit. Frequency had already been sued and received notice of the Texas Lawsuit suit at the time it filed this duplicitous action. Frequency's claims can be fully litigated in the Texas Lawsuit. Therefore, this Court should dismiss Frequency's suit as inappropriate for declaratory relief.

## IV.     Conclusion

Clear Channel is the real aggrieved party in this lawsuit. It agreed to sell Frequency 187 radio stations based on Frequency's promise to abide by the terms of the APA. Frequency's breach and refusal to comply with the terms of the APA placed Clear Channel in an untenable position and necessitated the filing of the August 17, 2007 Texas Lawsuit. Frequency consented to venue and personal jurisdiction in Texas, and it would be improper to allow Frequency to use the New York Lawsuit to avoid and breach yet another term of the APA. In addition, the *Colorado River* and *Guilini* factors and the first-filed rule support dismissal or stay. All of Frequency's claims and defenses can be asserted in the Texas Lawsuit, and the entire suit can be resolved by the Texas court. Thus, Clear Channel respectfully requests that the Court dismiss or, in the alternative, stay the New York Lawsuit. In addition, Clear Channel requests such other and further relief, at law and in equity, to which they may be justly entitled.

---

[73] *Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d at 551.
[74] *Staley Elevator Co. v. Otis Elevator Co.*, 35 F. Supp. 778, 780 (N.J. 1940)(granting motion to dismiss declaratory judgment action in patent dispute).

Dated: October 2, 2007  
New York, New York

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: *R. Laurence Macon* (signature)

R. Laurence Macon  
300 Convent Street, Suite 1600  
San Antonio, Texas 78205  
Telephone:  (210) 281-7000  
Fax:  (210) 224-2035  
lmacon@akingump.com

Ariane A. Qureshi  
590 Madison Avenue  
New York, NY 10022-2525  
Telephone:  (212) 872-1000  
Fax:  (212) 872-1002  
aaustin@akingump.com

COUNSEL FOR DEFENDANT  
CLEAR CHANNEL BROADCASTING, INC.