**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FREQUENCY, LLC (f/k/a GOODRADIO.TX, LLC), INC.

          Plaintiff,

v.

CLEAR CHANNEL BROADCASTING, INC.,

          Defendant.

No. 07-CIV-7785 (PKC)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR STAY

**AKIN GUMP STRAUSS HAUER**
**& FELD LLP**
R. Laurence Macon
300 Convent Street, Suite 1600
San Antonio, Texas 78205
Telephone:    (210) 281-7000
Fax:        (210) 224-2035
lmacon@akingump.com

Ariane A. Qureshi
590 Madison Avenue
New York, NY 10022-2525
Telephone:    (212) 872-1000
Fax:        (212) 872-1002
aaustin@akingump.com

*Attorneys for Defendant*
*Clear Channel Broadcasting, Inc.*

# TABLE OF CONTENTS

**Page (s)**

Table of Authorities.................................................................................................. ii

I.      Introduction..........................................................................................................1

II.     Argument and Authorities.....................................................................................1

      A.      The Confidentiality Agreement is binding on Frequency under the express terms of that Agreement and the APA..................................................................1

      B.      The Texas lawsuit's first-filed status is entitled to due consideration....................3

      C.      The *Colorado River* factors favor abstention..........................................................4

      D.      A *Giulini* stay is appropriate in this case. ............................................................6

      E.      Frequency's declaratory judgment claim does nothing more than single out a portion of the dispute between the parties........................................................7

III.    Conclusion ...........................................................................................................9

# TABLE OF AUTHORITIES

**CASES**                                                                              **Page (s)**

*Alameda Room, Inc. v. Pitta,*
　　538 F. Supp. 1072 (S.D.N.Y. 1982) ................................................................ 7

*Apotex, Inc. v. Sanofi-Synthelabo,*
　　386 F. Supp. 2d 549 (S.D.N.Y. 2005) (citation and quotation omitted).............. 9

*Berisford Capital Corp. v. Cent. States, S.E. & S.W. Areas Pension Fund,*
　　677 F. Supp. 220 (S.D.N.Y. 1988) ................................................................... 3

*Bremen v. Zapata Off-Shore Co.,*
　　407 U.S. 1 (1972) ........................................................................................ 2, 3

*Cedar Rapids Cellular Tel., L.P. v. Miller,*
　　No. C00-58, 2000 WL 34030836 at *13 (N.D. Iowa Sept. 15, 2000) ................ 4

*City Trade & Indus., Ltd. v. New Cent. Jute Mills Co., Ltd.,*
　　250 N.E.2d 52 (N.Y. 1969) ............................................................................. 3

*CollegeNET, Inc. v. ApplyYourself, Inc.,*
　　No. CV-02-484, 2002 WL 33962845 (D. Or. July 26, 2003)............................. 3

*Computer Assocs. Int'l, Inc. v. Elec. Data Sys Corp.,*
　　816 F. Supp. 845 (E.D.N.Y. 1993) ................................................................... 8

*Dunkin' Donuts Franchised Restaurants, Ltd. v. Rijay, Inc.,*
　　2007 WL 1459289 at *3 (S.D.N.Y. May 16, 2007) ......................................... 8

*Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc.,*
　　48 F.3d 46 (1st Cir. 1995) .............................................................................. 6

*Everest Capital Ltd. v. Everest Funds Mgt., LLC,*
　　178 F. Supp. 2d 459 (S.D.N.Y. 2002) .............................................................. 3

*Fed. Deposit Ins. Corp. v. Four Star Holding Co.,*
　　178 F.3d 97 (2d Cir. 1999) .............................................................................. 6

*Guilini v. Blessing,*
　　654 F.2d 189 (2d Cir. 1981) ..................................................................... 1, 6, 7

*In re AIU Ins. Co.,*
　　148 S.W.3d 109 (Tex. 2004) ........................................................................... 3

*In re Autonation, Inc.*,
      228 S.W.3d 663 (Tex. 2007) ............................................................................... 3

*Inn Chu Trading Co. v. Sara Lee Corp.*,
      810 F. Supp. 501 (SDNY 1992) ...................................................................... 4, 5

*Ivy-Mar Co. v. Weber-Stephen Prods. Co.*,
      No. 93 Civ. 5973, 1993 WL 535166 (S.D.N.Y. Dec. 22, 1993) .......................... 3

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
      460 U.S. 1 (1983) ............................................................................................ 5

*Prudential Ins. Co. of Am. v. Doe*,
      140 F.3d 785 (8th Cir. 1998) ............................................................................ 4

*Rose v. Village of Upper Nyack*,
      669 F. Supp. 654 (S.D.N.Y. 1987) ................................................................... 7

*Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*,
      3 F.3d 877 (5th Cir. 1993) ............................................................................... 4

*Southwest Intelecom, Inc. v. Hotel Networks Corp.*,
      997 S.W.2d 322 (Tex. App.—Austin 1999, pet. denied) ................................... 3

*Stoll v. Gottlieb*,
      305 U.S. 165 (1938) ........................................................................................ 3

*Sun Forest Corp. v. Shvili*,
      152 F. Supp. 2d 367 (S.D.N.Y. 2001) .............................................................. 2

*Van Wagner Enters., LLC v. Brown*,
      367 F. Supp. 2d 530 (S.D.N.Y. 2005) ........................................................... 6, 7

*Village of Westfield v. Welch's*,
      170 F.3d 116 (2d Cir. 1999) ............................................................................ 8

*Walker v. Gormley*,
      1991 WL 280853 at *1 (S.D.N.Y. Dec. 18, 1991) .............................................. 7

*Weibrecht v. Jones*,
      901 F.2d 17 (2d Cir. 1990) .............................................................................. 2

*Wilton v. Seven Falls Co.*,
      515 U.S. 277 (1995) ........................................................................................ 8

*Woodford v. Community Action Agency of Greene County, Inc.,*
        239 F.3d 517 (2d Cir. 2001) ............................................................................... 5

## **STATUES**

N.Y.C.P.L.R. § 3211(a)(4) ................................................................................................... 3

## I.    Introduction

Frequency's allegation that Clear Channel "forum shopped" by filing its lawsuit in Texas rings hollow in light of Frequency's later filing of a lawsuit on the same issues in the New York state court—*after* it had been informed of the Texas lawsuit.  Clear Channel had every right to rely on the terms of the forum selection clause which Frequency expressly assumed when it entered into the APA.  Frequency is wrong that it is not bound by the forum selection agreement, and it is wrong that the *Colorado River* and *Giulini* factors do not favor a dismissal or, at a minimum, a stay of these proceedings.  Venue for the dispute between these parties properly lies in Bexar County, Texas. Clear Channel respectfully requests that the Court dismiss or stay this action pending resolution of the Texas case.

## II.    Argument and Authorities

### A.    The Confidentiality Agreement is binding on Frequency under the express terms of that Agreement and the APA.

Contrary to Frequency's assertions, the forum selection provision of the Confidentiality Agreement related not only to the Agreement itself, but also to *"the Transaction* contemplated hereby"—namely, the purchase of Clear Channel's radio stations.[1]  When Frequency (f/k/a GoodRadio.TV) entered into the Asset Purchase Agreement ("APA") with Clear Channel as the "Buyer," it expressly assumed the terms of the Confidentiality Agreement:

> 5.1    Confidentiality.  Seller or an affiliate of Seller and Buyer or an affiliate of Buyer are parties to a nondisclosure agreement (the "NDA") with respect to Seller and its stations. *To the extent not already a direct party thereto*, Buyer and Seller hereby assume the NDA and *agree to be bound* by the provisions thereof."[2]

---

[1] *See* Declaration of Melanie G. Cowart in Support of Defendants' Motion to Dismiss or in the Alternative, Stay (Dkt. No. 16) at Ex. 2, ¶ 12 (emphasis added).

[2] *Id.* at Ex. 1(A), art. 5.1 (emphasis added).

1

By entering into the APA, Frequency through this section represented to Clear Channel that its affiliate was a party to the Confidentiality Agreement (the "NDA").[3]  Thus, even if Frequency was not a "direct party" initially to the Confidentiality Agreement, it agreed to be bound by the terms of that Agreement, including the forum selection clause.

In a diversity action, federal courts apply federal law to determine the enforceability of a contractual forum selection clause.[4]  A forum selection clause will be enforced "unless it is clearly shown that enforcement would be unreasonable or unjust or that the clause was obtained through fraud or overreaching." *Id.* (citing *The BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).  Frequency has not alleged that the forum selection clause at issue here is either unreasonable or that it was procured through fraud or overreaching.  Unlike the discretionary standard used to assess the effect of a forum selection clause under a Section 1404(a) motion to transfer, a federal court presented with a motion to dismiss, as here, must apply the federal *BREMEN* standard and enforce the venue selection absent a showing of unreasonableness or fraud.[5]

Further, whether the forum selection clause is mandatory or permissive is irrelevant.[6]  Frequency "irrevocably waive[d]" any objection to Texas as the venue of a dispute between the

---

[3] The Confidentiality Agreement was signed by Dean Goodman, CEO of DeanRadio.TV, Inc.  Dean Goodman was also CEO of GoodRadio.TV, LLC, which became Frequency, LLC. At any rate, if Frequency wishes to challenge personal jurisdiction in the Texas case on the basis that it is not bound by the Confidentiality Agreement, that is for the Texas court to decide.

[4] *Weibrecht v. Jones*, 901 F.2d 17, 19 (2d Cir. 1990).

[5] *Id.*

[6] *See Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 380 & n.21 (SDNY 2001) (enforcing permissive forum selection clause under *BREMEN*).

parties. Thus, the forum selection provision constitutes Frequency's consent to personal jurisdiction in the Texas court.[7]

Frequency peppers its Opposition with unsubstantiated allegations that the Texas courts do not have jurisdiction over it, as if it were up to this Court to make that initial determination. On the contrary, it is up to the Texas court to determine whether it has jurisdiction over the parties.[8] Texas law is clear that forum selection clauses are enforceable.[9]

In light of the forum selection clause and in the interests of comity, the Court should dismiss this case.

**B.    The Texas lawsuit's first-filed status is entitled to due consideration.**

Although courts do not apply the first-filed rule in a rigid or mechanical way, they agree that "first filed" does not mean "first served," as Frequency contends.[10] While the "first filed

---

[7] *Id.*

[8] *See Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938) (court must have power to determine whether it has jurisdiction over litigants).

[9] *In re AIU Ins. Co.*, 148 S.W.3d 109, 114-15 (Tex. 2004) (following *BREMEN*); *see Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 325 (Tex. App.—Austin 1999, pet. denied) (non-exclusive venue clause requires that parties submit to venue selected *"in the event a suit related to the agreement is brought there."* (emphasis in original)).

[10] *See Everest Capital Ltd. v. Everest Funds Mgt., LLC*, 178 F. Supp. 2d 459, 463 (S.D.N.Y. 2002) (noting that Second Circuit has not addressed this issue but allowing first-filed and second-served suit to proceed); *Berisford Capital Corp. v. Cent. States, S.E. & S.W. Areas Pension Fund*, 677 F. Supp. 220, 222 n.1 (S.D.N.Y. 1988) ("The 'first service' rule is not the law of this circuit, and I see no reason to vary from what is the more predictable and more easily enforced rule adopted by what appears to be the majority of courts."); *Ivy-Mar Co. v. Weber-Stephen Prods. Co.*, No. 93 Civ. 5973, 1993 WL 535166 (S.D.N.Y. Dec. 22, 1993) (first-filed rule applied although first-filed suit was second served); *CollegeNET, Inc. v. ApplyYourself, Inc.*, No. CV-02-484, 2002 WL 33962845 (D. Or. July 26, 2003) ("[T]he first to file rule means the first to be filed, not the first to be served." ); *see also City Trade & Indus., Ltd. v. New Cent. Jute Mills Co., Ltd.*, 250 N.E.2d 52, 58 (N.Y. 1969) ("Generally, the court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of the rules of comity to interfere."); *In re Autonation, Inc.*, 228 S.W.3d 663, 670 (Tex. 2007) ("When a matter is first filed in another state, the general rule is that Texas courts stay the later-filed proceeding pending adjudication of the first suit."); N.Y.C.P.L.R. § 3211(a)(4) (party may move to dismiss if there is another action pending between same parties for same cause of action in court of any state or U.S.).

rule" may normally apply to concurrent federal litigation, courts also consider which case was filed first when confronted with a state/federal situation.[11]

Thus, this Court may consider that the Texas state-court case was the first filed. Frequency does not present proof to rebut the presumption in favor of the first-filed lawsuit nor does it present proof to support its unsubstantiated statement that Clear Channel "failed" or delayed service of the Defendants in the Texas case, which is not the case. As a result, this Court should dismiss the later-filed Frequency suit.

### C.     The *Colorado River* factors favor abstention.

Even if the forum selection clause were unenforceable, the Court should abstain in this case. Frequency is wrong when it argues that the third factor, which seeks to avoid piecemeal litigation, does not strongly favor Clear Channel. Frequency does not even address the fact that not all of the parties relevant to the issues in this case are before this Court, but are named in the Texas litigation. For example, there are nine different sellers of the radio stations, and related licenses, but Frequency has only brought suit against Clear Channel, and none of the other owners. As Clear Channel noted in its original briefing, there is the possibility of inconsistent outcomes regarding the breach of contract claims. All of these are factors to consider in determining whether a danger of piecemeal litigation exists.[12]

Frequency would like to minimize the importance of this element, but the cases do not support its position. For example, in *Inn Chu Trading Co. v. Sara Lee Corp.*, cited by Frequency,

---

[11] *See, e.g., Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 788 (8th Cir. 1998) (finding significant the fact that declaratory judgment plaintiff insurer filed suit first in federal court before insureds filed suit in state court); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 886-87 (5th Cir. 1993) ("In some cases, the date on which the state court suit was filed can make a difference in the application of the abstention doctrine."); *Cedar Rapids Cellular Tel., L.P. v. Miller*, No. C00-58, 2000 WL 34030836 at *13 (N.D. Iowa Sept. 15, 2000) (acknowledging "first to file" rule in competing state/federal cases where plaintiffs first filed suit in federal court, but deciding in favor of abstention and dismissing federal case).

the court noted, "The overriding concerns expressed in *Colorado River Water Conservation Dist. v. United State*, 424 U.S. 800 (1976), *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) and subsequent Second Circuit cases are the avoidance of piecemeal or purely duplicative litigation and the concomitant waste of judicial resources."[13] Here, the entire case—all claims and all parties—may be disposed of in the Texas case. The "exceptional circumstances" that lend themselves to the conservation of federal judicial resources through abstention exist "where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'"[14] The *Woodford* case, cited by Frequency for its refusal to abstain, involved federal claims, such that state court litigation would not result in a comprehensive disposition of the litigation.[15]

Frequency's attempt to distinguish the claims in this case from the Texas case are superficial rather than substantive. The basic dispute in the case is which party breached the APA. Each party's actions—whether occurring before or after the execution of the document—are relevant to this issue. In sum, the Texas court can give complete relief to all of the parties, thereby avoiding duplicative and piecemeal litigation.

As to the fourth factor, despite Frequency's refusal to acknowledge it, the Texas case *was* filed first. Frequency also contends without support that the New York case will progress more rapidly than the Texas case and that there has been no action in the Texas case. Frequency neglects to tell the Court that Clear Channel has already served discovery and noticed

---

[12] *See* Clear Channel's Memorandum of Law (Dkt. No. 17) at 6-7 and cases cited therein.

[13] *Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F. Supp. 501, 508 (S.D.N.Y. 1992).

[14] *Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001).

[15] *See id.* at 523-24 (federal laws governed plaintiffs' Title VII and ADEA claims and federal claims presented potential larger recovery; further, plaintiffs agreed to stay or withdraw their state-court claims); *see also*

depositions in the Texas case.[16]   Frequency has responded by filing a motion for protective order[17], as well as special exceptions.[18]  This factor favors abstention.

As to the sixth factor, Frequency again relies on its unsupported assertion that the Texas court does not have jurisdiction over it.  That is for the Texas court to decide.  The case Frequency relies on, *Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc.,*[19] is distinguishable.  In that case, the state court had already dismissed the party opposing abstention for want of personal jurisdiction, and the state appellate court had not ruled on the appeal of that decision.  Therefore, the federal court was justified in expressing concern that protection of the parties' rights in the Illinois court was "necessarily problematic."  Here, there is no such issue and, given the parties' forum selection agreement and the Texas courts' policy of enforcing such clauses, there is little doubt that the Texas court could easily protect Frequency's rights.

Under *Colorado River*, the Court should abstain from asserting jurisdiction over this case.

**D.    A *Giulini* stay is appropriate in this case.**

"The law in this circuit is clear that a district court may stay federal proceedings to allow resolution of a similar cause of action pending in state court."[20]  The courts analyze the propriety

---

*Fed. Deposit Ins. Corp. v. Four Star Holding Co.,* 178 F.3d 97, 101-02 (2d Cir. 1999) (refusing to abstain because foreclosure was *in rem* proceeding and therefore first *Colorado River* factor was dispositive) (cited by Frequency).

[16] *See* Declaration of Melanie G. Cowart in Support of Reply Memorandum of Law in Support of Defendants' Motion to Dismiss or Stay (Cowart Reply Decl.), Ex. 1(A).

[17] Cowart Reply Decl., Ex. 1.

[18] Cowart Reply Decl., Ex. 2.

[19] 48 F.3d 46 (1st Cir. 1995).

[20] *Van Wagner Enters., LLC v. Brown,* 367 F. Supp. 2d 530, 531 (S.D.N.Y. 2005) (citing *Giulini*).

of a stay pursuant to the *Giulini*[21] factors when a state suit is pending in civil as well as criminal matters.[22]

In *Brown*, the court decided that a stay was appropriate where: the state and federal cases arose from "a common nucleus of operative facts"; parties whom the defendant had not originally named (and sought to add) in his federal suit were already before the state court; and further proceedings would be required in federal court to determine if joinder of parties already in the state action was proper. The court concluded:

> These [*Giulini*] factors weigh heavily in favor of staying the instant action. Because all relevant parties have already been joined in a single action before the state court, which is competent to grant complete relief on all claims and counterclaims at issue in the instant case, proceeding with the federal action at this time would needlessly duplicate the state court proceedings and generate the risk of inconsistent outcomes. In addition, the claims at issue in this case arise exclusively under state law.[23]

All of these factors are present in the instant case. The same analysis applies here, and argues in favor of a stay in these proceedings pending resolution of the Texas case.

**E.     Frequency's declaratory judgment claim does nothing more than single out a portion of the dispute between the parties.**

Frequency parses out a single issue intertwined within the principal dispute between the parties and says that this represents a different claim from Clear Channel's claims in Texas. Specifically, Frequency contends that its request for a declaration of what the allowable damages under the APA for a breach of contract are is a sufficiently different claim entitling it to maintain

---

[21] *Guilini v. Blessing*, 654 F.2d 189 (2d Cir. 1981).

[22] *See, e.g., id., Walker v. Gormley*, No. 91-CIV-3136, 1991 WL 280853 at *1 (S.D.N.Y. Dec. 18, 1991) (staying suit pending outcome of state action regarding validity and enforceability of settlement agreement); *Rose v. Village of Upper Nyack*, 669 F. Supp. 654, 656 (S.D.N.Y. 1987) (granting stay in light of *Giulini* factors as well as *Colorado River* factors in case challenging zoning ordinance); *Alameda Room, Inc. v. Pitta*, 538 F. Supp. 1072, 1077-78 (S.D.N.Y. 1982) (applying *Giulini* factors and concluding that stay should issue where central issue in both state and federal cases concerned effect of party's purported withdrawal from agreement as to whether it relieved that party from arbitration provision).

its declaratory judgment action. On the contrary, the declaratory judgment is nothing more than Frequency's attempt to manipulate the declaratory judgment procedure to secure a forum more to its liking. The cases Frequency cites do not support its position. In *Dunkin' Donuts Franchised Restaurants, Ltd. v. Rijay, Inc.*, both parties sought declaratory judgments as to whether the franchisees breached the franchise agreement. The plaintiffs, however, sought in addition "damages for, *inter alia*, breach of contract, unfair competition and trademark and trade dress infringement."[24] Understandably, in light of these varied claims the court found it had a basis for jurisdiction independent of the Declaratory Judgments Act.[25] Similarly, in *Welch's*, the defendant sought a declaration of rights under an agreement.[26] In addition, the plaintiff sought payment of unpaid user fees against Welch, and Welch contested the payment and sought damages caused by the plaintiff's conduct.[27] There, too, the claims were sufficiently separate for the court to conclude that the relief sought was not purely declaratory.

In contrast, Frequency's declaratory claims would require the Court to "literally take a piece of a quilt and treat it separately."[28] The proper analysis for this Court in determining whether to entertain Frequency's declaratory judgment claims is the discretionary standard under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), not *Colorado River*. This is definitely a case where the court "should be dubious of declaratory judgment actions when the plaintiff files suit

---

[23] *Brown*, 367 F. Supp. 2d at 531.

[24] *Dunkin' Donuts Franchised Restaurants, Ltd. v. Rijay, Inc.*, No. 06-CIV-8237, 2007 WL 1459289 at *3 (S.D.N.Y. May 16, 2007).

[25] *Id.*

[26] *Village of Westfield v. Welch's*, 170 F.3d 116, 124 n.4 (2d Cir. 1999).

[27] *Id.*

[28] *Computer Assocs. Int'l, Inc. v. Elec. Data Sys Corp.*, 816 F. Supp. 845, 848 (E.D.N.Y. 1993) (citation and quotation omitted).

to interfere with an action already filed, regardless of whether the preexisting action was filed in state or federal court."[29]

## III.    Conclusion

For all of the reasons cited in the foregoing and in Clear Channel's Memorandum of Law in Support of its Motion to Dismiss or Stay, Clear Channel respectfully requests that the Court dismiss or, in the alternative, stay the New York Lawsuit.  In addition, Clear Channel requests such other and further relief, at law and in equity, to which it may be justly entitled.

---

[29] *Apotex, Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549, 551 (S.D.N.Y. 2005) (citation and quotation omitted).

Dated:    October 23, 2007          Respectfully submitted,
          New York, New York

                                    AKIN GUMP STRAUSS HAUER & FELD LLP

                                    By:    *R. Laurence Macon* (signature)
                                    _____

                                    R. Laurence Macon
                                    300 Convent Street, Suite 1600
                                    San Antonio, Texas 78205
                                    Telephone:    (210) 281-7000
                                    Fax:          (210) 224-2035
                                    lmacon@akingump.com

                                    Ariane A. Qureshi
                                    590 Madison Avenue
                                    New York, NY 10022-2525
                                    Telephone:    (212) 872-1000
                                    Fax:          (212) 872-1002
                                    aaustin@akingump.com

                                    COUNSEL FOR DEFENDANT
                                    CLEAR CHANNEL BROADCASTING, INC.

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of October, 2007, I caused a true and correct copy of the foregoing Reply Memorandum of Law in Support of Defendant's Motion to Dismiss or Stay and Declaration of Melanie G. Cowart in Support of Defendant's Reply Memorandum of Law in Support of Defendant's Motion to Dismiss or Stay to be served by e-mail and first class mail upon the following:

Max R. Shulman, Esq.
Michael T. Reynolds, Esq.
Cravath, Swaine & Moore LLP
825 8th Avenue
New York, NY 10019
212-474-1000
mshulman@cravath.com
mreynolds@cravath.com

*Attorneys for Plaintiff*


Dated:   October 23, 2007
          New York, New York




_____
R. Laurence Macon