# <u>PART 1 OF 2</u>

# OF

# EXHIBIT 2

## TO DECLARATION OF MELANIE G. COWART IN SUPPORT OF DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR STAY

# EXHIBIT 2

CAUSE NO. 2007 CI 12493

| | | |
|---|---|---|
| CLEAR CHANNEL BROADCASTING, INC., CLEAR CHANNEL BROADCASTING LICENSES, INC., CC LICENSES, LLC, CAPSTAR RADIO OPERATING COMPANY, CAPSTAR TX LIMITED PARTNERSHIP, AMFM RADIO LICENSES, LLC, CITICASTERS CO., CITICASTERS LICENSES, L.P. and JACOR BROADCASTING CORPORATION | § § § § § § § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § § | BEXAR COUNTY, TEXAS |
| FREQUENCY, LLC (f/k/a GOODRADIO.TV, LLC), FREQUENCY LICENSE, LLC (f/k/a GOODRADIO.TV LICENSE, LLC), AMERICAN SECURITIES CAPITAL PARTNERS, LLC and JEFFREY D. WARSHAW | § § § § § § § § | |
| Defendants. | § | 288th JUDICIAL DISTRICT |

## DEFENDANTS' SPECIAL APPEARANCE AND, SUBJECT THERETO, SPECIAL EXCEPTIONS AND ORIGINAL ANSWER

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

1. SPECIAL APPEARANCE .............................................................................................1

Preliminary Statement.......................................................................................................1

Statement Of Facts............................................................................................................2

Argument ...........................................................................................................................4

I.      THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS. ...............4

        A.      Plaintiffs Have Failed To Allege Sufficient Facts Supporting Their Claim
                Of Jurisdiction Over Defendants. ...........................................................................5

                1.      This Court lacks personal jurisdiction over Frequency. ...............................6

                        a.      There is no specific jurisdiction over Frequency. ...........................6

                        b.      There is no general jurisdiction over Frequency.............................8

                2.      This Court lacks personal jurisdiction over ASCP. ......................................8

                3.      This Court lacks personal jurisdiction over Frequency License. ...............10

                4.      This Court lacks personal jurisdiction over Warshaw. ..............................10

        B.      Exercising Jurisdiction Would Offend Traditional Notions Of Fair Play
                And Substantial Justice. .......................................................................................12

Conclusion .......................................................................................................................13

2. SPECIAL EXCEPTIONS ............................................................................................13

I.      PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT
        (COUNT I)...................................................................................................................13

II.     PLAINTIFFS' TORT CLAIMS ARE INSUFFICIENT AS A MATTER OF
        LAW. ..........................................................................................................................15

        A.      Although Counts II Through V Are Governed By New York Law, The
                Elements Of The Causes Of Action In Texas And New York Are
                Substantially Similar..............................................................................................15

B.  Plaintiffs' Sole Basis For Their Fraud Claim Is Insufficient As A Matter Of Law (Count II). ..............................................................................................16

C.  Plaintiffs' Allegations Are Insufficient To Establish Their Tortious Interference With Prospective Business Relations Claim (Count III). ..................18

D.  Plaintiffs Fail To State A Claim For Tortious Interference With An Existing Contract Against Either ASCP Or Jeffrey Warshaw (Counts IV and V)..............................................................................................................19

    1.  ASCP could not tortiously interfere with the APA because plaintiffs allege that Frequency is owned and controlled by ASCP. .........19

    2.  Warshaw could not tortiously interfere with the APA because plaintiffs allege that he is a consultant of Frequency's and acted in furtherance of Frequency's interests. ..........................................................20

Conclusion ........................................................................................................................22

3.  ORIGINAL ANSWER ...............................................................................................22

PRAYER FOR RELIEF .....................................................................................................23

.

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*3-D Elec. Co. v. Barnett Constr. Co.*, 706 S.W.2d 135 (Tex. App.—Dallas 1986,
    writ ref'd n.r.e.) ...................................................................................................................... 7

*Advanced Global Tech LLC v. Sirius Satellite Radio, Inc.*, 836 N.Y.S.2d 807
    (N.Y. Sup. Ct. 2007) ...................................................................................................... 15, 18

*Alenia Spazio S.p.A. v. Reid*, 130 S.W.3d 201 (Tex. App.—Houston [14th Dist.]
    2003, pet. denied)............................................................................................................ 6, 11

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).................................................. 12

*Baty v. Protech Ins. Agency*, 63 S.W.3d 841 (Tex. App.—Houston [14th Dist.]
    2001, pet. denied)........................................................................................................... 16, 18

*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002) ........................ 4, 5, 8, 10

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996)......................................................... 23

*Carbonit Houston, Inc. v. Exchange Bank*, 628 S.W.2d 826 (Tex. App.—Houston
    [14th Dist.] 1982, writ ref'd n.r.e.)................................................................................... 7

*Central Texas Micrographics v. Leal*, 908 S.W.2d 292 (Tex. App.—San Antonio
    1995, no writ)..................................................................................................................... 16

*Devereux v. Alvin State Bank*, No. 14-98-00698-CV, 1999 WL 816157 (Tex.
    App.—Houston [14th Dist.] Oct. 14, 1999, pet. denied) .............................................. 17, 19

*Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25 (Tex. App.—San Antonio
    1998, pet. dism'd w.o.j.) .................................................................................................. 12

*El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616 (Tex. App.—
    Houston [1st Dist.] 2003, pet. denied) .......................................................................... 14

*Figueroa v. West*, 902 S.W.2d 701 (Tex. App.—El Paso 1995, no writ)...................................... 17

*Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798 (Tex. App.—Houston
    [1st Dist.] 1998, pet. denied).......................................................................................... 11, 12

*Geo-Chevron Ortiz Ranch v. Woodworth*, No. 04-06-00412-CV, 2007
    WL 671340 (Tex. App.—San Antonio, pet. denied) ..................................................... 7, 9

*Grieve v. Barclays Capital Secs. Ltd.*, No. 602820/1998, 1999 WL 1680654 (N.Y.
Sup. Ct. Sept. 10, 1999) .................................................................................................. 19

*Guardian Royal Exchange Assurance., Ltd. v. English China Clays, P.L.C.*, 815
S.W.2d 223 (Tex. 1991).................................................................................................. 12

*Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979) ....................................................... 15

*Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995) ......................................... 19, 21, 22

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (N.Y. 1996) ........................... 16

*Locascio v. James V. Acquavella, M.D., P.C.*, 586 N.Y.S.2d 78 (N.Y. App. Div.
1992) .................................................................................................................. 16, 17, 19

*Lutz v. Caracappa*, 828 N.Y.S.2d 426 (N.Y. App. Div. 2000)....................................... 21

*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005) ......... 5, 7, 8

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569 (Tex. 2007)............................. 5

*Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170 (Tex. App.—Houston
[14th Dist.] 2003, pet. denied) ......................................................................................... 8

*Monsanto Co. v. Milam*, 494 S.W.2d 534 (Tex. 1973)................................................... 17

*MTI/The Image Group, Inc. v. Fox Studios East, Inc.*, 690 N.Y.S.2d 576 (N.Y.
App. Div. 1999) .............................................................................................................. 20

*National Union Fire Ins. Co. v. Worley*, 690 N.Y.S.2d 57 (N.Y. App. Div. 1999) ...................... 15

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614 (N.Y. 1996) ..................... 19

*Schoellkopf v. Pledger*, 778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) ........................ 20

*State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282 (Tex. App.—Corpus Christi
1990, writ denied) ........................................................................................................... 15

*Stier v. Reading & Bates Corp.*, 992 S.W.2d 423 (Tex. 1999)....................................... 15

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992).............................. 16

*TeleVentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900 (Tex. App.—Austin 2000,
pet. denied)....................................................................................................................... 6

*Tennessee Gas Pipeline v. Lenape Res. Corp.*, 870 S.W.2d 286 (Tex. App.—San
Antonio 1993) *aff'd in part and rev'd in part on other grounds*, 925 S.W.2d
565 (Tex. 1996).............................................................................................................. 14

iv

*Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico, Inc.*, 304 F. Supp. 2d
903 (W.D. Tex. 2003) ......................................................................................... 20

*The Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496 (Tex. App.—
Houston [14th Dist.] 2002, no pet.) ...................................................................... 10

*Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160 (Tex. App.—
San Antonio 1997, writ denied) ............................................................................. 20

*Van Polen v. Wisch*, 23 S.W.3d 510 (Tex. App.—Houston [1st Dist.] 2000, pet.
denied) .................................................................................................................... 14

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001) ...................................... 18

*Wilson v. Lewis*, No. 04-97-744-CV, 1999 WL 93364 (Tex. App.—San Antonio
Feb. 17, 1999, no pet.) ........................................................................................... 21

*Zoya Enters., Inc. v. Sampri Invs., L.L.C.*, No. 14-04-01158-CV, 2006 WL
1389582 (Tex. App.—Houston [14th Dist.] May 23, 2006, no pet.) ....................... 15

## Statutes & Administrative Codes

TEX. CIV. PRAC. & REM. CODE § 17.042(1) .................................................................... 5


TEX. CIV. PRAC. & REM. CODE § 41.008(b) ................................................................... 23

To the Honorable Court:

Frequency, LLC ("Frequency") (f/k/a GoodRadio.TV, LLC), Frequency License, LLC ("Frequency License") (f/k/a GoodRadio.TV License, LLC), American Securities Capital Partners, LLC ("ASCP") and Jeffrey D. Warshaw ("Warshaw") (collectively, "defendants") appear solely and specially under Rule 120a of the Texas Rules of Civil Procedure and file this special appearance to object to the personal jurisdiction of this Court. Subject to and without waiving their special appearance, defendants file their special exceptions and original answer. Defendants respectfully show the Court the following:

## 1. SPECIAL APPEARANCE

### Preliminary Statement

The allegations in the original petition arise out of Frequency's agreement to purchase from plaintiffs certain radio stations across the country (but not in Texas). Unfortunately, plaintiffs' actions and inactions with respect to the stations have caused a substantial (and unanticipated) reduction in value. Plaintiffs have mismanaged the stations in violation of their obligations under the agreement, resulting in a loss of value and ability to generate revenue at pre-signing levels. Frequency also discovered, after signing the agreement, that—contrary to the express representation that plaintiffs made regarding the accuracy of the financial statements that plaintiffs provided for the radio stations and that Frequency relied upon to calculate the purchase price—the financial statements misrepresented the actual expenses associated with running the stations.

Frequency brought those problems and others to plaintiffs' attention and made a good faith effort to resolve the issues outside the courtroom so the deal could go forward. Plaintiffs, however, ignored Frequency's evidence of plaintiffs' mismanagement and chose instead to file suit--surprisingly for breach of contract and various torts, despite Frequency's

repeated assurances that it had not terminated the agreement--in Texas, a forum with no connection to plaintiffs' claims, to defendants or to the agreement giving rise to plaintiffs' claims.

Defendants are not subject to the personal jurisdiction of a Texas court. They are not residents of Texas. They do not have continuous or systematic contact with Texas. The existence of an agreement between one defendant, Frequency, and plaintiffs, "some of whom are Texas residents," Pls.' Orig. Pet. ¶ 16, is an insufficient basis for jurisdiction. Indeed, not one of defendants is a resident of Texas, not one of the radio stations that is subject to the agreement is located in Texas and none of the relevant conduct at issue in plaintiffs' original petition took place in Texas.

Defendants support this special appearance with the affidavits of Paul Kasper on behalf of Frequency, Paul Kasper on behalf of Frequency License, Glenn Kaufman on behalf of ASCP and Warshaw, attached as Exhibits A-D, respectively. Defendants reserve the right to submit additional evidence in support of their special appearance.

## Statement Of Facts

Frequency and Clear Channel Broadcasting, Inc. ("CCBI") (and several of CCBI's corporate affiliates) entered into an Asset Purchase Agreement, dated as of April 30, 2007 ("APA"), pursuant to which Frequency contracted to purchase from CCBI certain of CCBI's radio stations and related assets for a price of $452,100,000. (*See* Frequency Aff. ¶ 4.) ASCP, Frequency License and Warshaw are not parties to the APA. (*See* Kaufman Aff. ¶ 4; Frequency License Aff. ¶ 4; Warshaw Aff. ¶ 6; Frequency Aff. Ex. 1 ("Signature Page to the Asset Purchase Agreement").) All conditions precedent to consummation of the sale and purchase of the radio stations have not occurred. (*See* Frequency Aff. ¶ 5.) This is uncontested.

2

The original petition's sole basis for asserting personal jurisdiction over Frequency, Frequency License and ASCP in a Texas court is the APA. (*See* Pls.' Orig. Pet. ¶¶ 16, 17, 24, 26.) That is not enough. None of defendants or their agents ever traveled to Texas at any time in relation to the APA, including the negotiation and signing of the APA, or any of the events alleged in plaintiffs' original petition. (*See* Kaufman Aff. ¶ 5; Frequency Aff. ¶ 6; Frequency License Aff. ¶ 5; Warshaw Aff. ¶ 7.) Furthermore, none of defendants' alleged acts supposedly giving rise to the claims in the original petition occurred in Texas. None of the radio stations to be transferred under the APA is located in Texas. (*See* Frequency Aff. Ex. 2 (Exhibit A to the APA).) The APA does not anticipate or require any act to be performed by defendants in Texas prior to, in connection with or at anytime after closing. (*See generally* Frequency Aff. Ex. 1 (APA).)

None of defendants is a Texas resident. (*See* Kaufman Aff. ¶ 2; Frequency Aff. ¶ 2; Frequency License Aff. ¶ 2; Warshaw Aff. ¶ 3.) Plaintiffs concede as much. (*See* Pls.' Orig. Pet. ¶¶ 11-14.) Frequency is a limited liability company organized under the laws of Delaware with its principal place of business in New York. (*See* Frequency Aff. ¶ 2.) Frequency License is a limited liability company organized under the laws of Delaware with its principal place of business in New York. (*See* Frequency License Aff. ¶ 2.) ASCP is a limited liability company organized under the laws of Delaware with its principal place of business in New York. (*See* Kaufman Aff. ¶ 2.) Warshaw is a resident and domiciliary of Connecticut. (*See* Warshaw Aff. ¶ 2.)

In addition, the attached affidavits establish that none of defendants has, either by itself or through its agents:

- had an office, employee, place of business, postal address or telephone listing in Texas;

3

- traveled to Texas in connection with the APA;
- been licensed or applied for a license to do business in Texas;
- had or been required to have a designated agent for service of process in Texas;
- owned, used or possessed any real property in Texas;
- had any agents assigned to work for it in Texas;
- maintained any bank accounts or other property in Texas; or
- been a party to litigation in state or federal court in Texas, before this suit.

(*See* Kaufman Aff. ¶ 5; Frequency Aff. ¶ 10; Frequency License Aff. ¶ 5; Warshaw Aff. ¶ 6.)

The attached Warshaw Affidavit further establishes that Warshaw has never resided in or been a domiciliary or citizen of Texas. (*See* Warshaw Aff. ¶ 3.)

**Argument**

## I. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

Plaintiffs allege that defendants are "doing business" in Texas under Texas's long-arm statute. (*See* Pls.' Orig. Pet. ¶¶ 16, 17.) They are wrong. Defendants do not have the requisite minimum contacts with Texas sufficient for a Texas court to exercise personal jurisdiction over them without offending due process.

To be consistent with due process, a nonresident is subject to personal jurisdiction in Texas only if (a) its minimum contacts support either specific or general jurisdiction and (b) the exercise of jurisdiction over it comports with traditional notions of fair play and substantial justice. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). "Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum." *Id.* at 796. The Texas Supreme Court recently explained the degree of relatedness required for the arise-from-or-relate-to test and held that there must be a "substantial connection" between the nonresident's forum-related contacts

4

and the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). For general jurisdiction, a defendant's contacts with the forum must be "continuous and systematic." *BMC*, 83 S.W.3d at 796.

The initial burden is upon the plaintiff to plead allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statue. *Id.* at 793. If the plaintiff carries its initial burden, the defendant must negate all jurisdictional bases alleged by the plaintiff. *Id.*

It is only the defendant's own contacts with the forum that count in the minimum contacts analysis, not those of the plaintiff or a third party. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). Thus, for jurisdiction to comport with due process, there must be some act with regard to the APA or defendants' alleged conduct by which defendants purposefully availed themselves of the benefits and protections of the laws of Texas. *See BMC*, 83 S.W.3d at 795. There is not.

## A.     Plaintiffs Have Failed To Allege Sufficient Facts Supporting Their Claim Of Jurisdiction Over Defendants.

Plaintiffs allege that the Court may exercise jurisdiction over Frequency and ASCP pursuant to TEX. CIV. PRAC. & REM. CODE § 17.042(1), which provides that "a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." (*See* Pls.' Orig. Pet. ¶ 16.) In support of their assertion of jurisdiction, plaintiffs make three allegations: (1) "Frequency and ASCP, nonresidents" entered into the APA with plaintiffs, "some of whom are citizens of Texas"; (2) "[t]he [APA] was to be performed in part in Texas"; and (3) the APA contains a Texas choice-of-law provision. (Pls.' Orig. Pet. ¶ 16.) With respect to Frequency License, plaintiffs' sole jurisdictional allegation is that it "engages in business in

5

Texas." (*Id.* ¶ 12.) And as for Warshaw, plaintiffs allege that he committed "a tort, which is the subject of this suit, in whole or in part in Texas." (*Id.* ¶ 17.) Those allegations are inaccurate and insufficient as a matter of law for a Texas court to exercise either specific or general jurisdiction over Frequency, Frequency License, ASCP or Warshaw.

### 1.    This Court lacks personal jurisdiction over Frequency.

#### a.    There is no specific jurisdiction over Frequency.

*First*, the fact that Frequency entered into the APA with plaintiffs, "some of whom are citizens of Texas," does not establish the requisite minimum contacts for jurisdiction. Merely contracting with a Texas resident does not satisfy the minimum contacts requirement. *See Alenia Spazio S.p.A. v. Reid*, 130 S.W.3d 201, 213 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Frequency never traveled to Texas in connection with the APA. All negotiations occurred over the phone and by email. And none of the radio stations to be transferred under the APA is located in Texas. No specific jurisdiction can exist under such facts. *Id.* (contracting with a Texas entity and conducting numerous telephone and facsimile communications with people in Texas relating to the contract did not establish minimum contacts); *TeleVentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 908-10 (Tex. App.—Austin 2000, pet. denied) (same). The location of some plaintiffs in Texas is not the result of Frequency's, or any defendants', "purposeful availment" of Texas law; rather, they are the result of plaintiffs' choices, and do not "give rise" to plaintiffs' claims in any event.

*Second*, Frequency has not engaged in any activity relating to the APA in Texas, and the APA does not require any act to be performed by any party in Texas. The APA is silent as to the locale of any party's performance. (*See* Frequency Aff. Ex. 1 (APA §§ 1.9, 8.1. 8.2).) Even the provision regarding payment does not require Frequency to take any action in Texas,

6

for the APA is silent as to the place of payment, *see id.* §§ 1.9, 8.2(i), and under such circumstances, the place of payment is the domicile of the payor, in this instance New York. *See Carbonit Houston, Inc. v. Exchange Bank*, 628 S.W.2d 826, 831 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *cf. 3-D Elec. Co. v. Barnett Constr. Co.*, 706 S.W.2d 135, 142 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) ("Clearly, the making of payments in Texas is not sufficient to establish minimum contacts.").

*Third*, absent an express understanding that a choice-of-law provision will be construed as a party's voluntary submission to the personal jurisdiction of courts in Texas, any such provision should not be interpreted as a nonresident's submission to the court's jurisdiction. *See 3-D Elec. Co.*, 706 S.W.2d at 145 n.9. "The issue is personal jurisdiction, not choice of law." *Id.* at 144-45. Although the APA contains a Texas choice-of-law provision, *see* Frequency Aff. Ex. 1 (APA § 11.9), there is no suggestion—and plaintiffs have not alleged to the contrary—that this provision can or should in any way be construed as Frequency's voluntary submission to the jurisdiction of Texas courts. Significantly, the APA does *not* contain a forum selection clause. And Frequency has not consented to jurisdiction in Texas in this case, in writing or otherwise. *(See* Frequency Aff. ¶ 3.)

*Fourth*, plaintiffs' tort claims do not allege any additional contacts with Texas by Frequency, so Frequency is not subject to specific jurisdiction on those claims. Allegations of a tortious act directed at a Texas resident are insufficient to confer specific jurisdiction. *See Geo-Chevron Ortiz Ranch v. Woodworth*, No. 04-06-00412-CV, 2007 WL 671340, at *3, 5 (Tex. App.—San Antonio, pet. denied) (mem. op.) (not designated for publication). "[I]t is the defendant's conduct and connection with the forum that are critical." *Holten*, 168 S.W.3d at 789 (internal quotations omitted). Even if Frequency's negotiation of the APA were fraudulent or

7

fraught with misrepresentation (and it was not) or tortiously interfered with CCBI's prospective business relations (and it did not), that would not alter Frequency's lack of minimum contacts with Texas. "Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter." *Holten*, 168 S.W.3d at 791.

### b.    There is no general jurisdiction over Frequency.

Aside from activities relating to the APA, plaintiffs do not allege any other conduct by Frequency in support of this Court's jurisdiction. General jurisdiction requires a showing that the defendant "conducted substantial activities within the forum," *BMC*, 83 S.W.3d at 797--which Frequency did not do. (*See* Frequency Aff. ¶ 10.) It involves a "more onerous burden" than that of specific jurisdiction. *Id.* Allegations involving a single business transaction, such as the APA, do not amount to the ongoing and systematic contacts required to support general jurisdiction. *See Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 175-76 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (no general jurisdiction where the defendant negotiated and signed a contract in Texas, performance under the contract took place elsewhere and the contract contained a Texas choice-of-law provision).

### 2.    This Court lacks personal jurisdiction over ASCP.

*First*, the APA cannot be a basis for personal jurisdiction over ASCP. Plaintiffs allege that ASCP is subject to the personal jurisdiction of a Texas court because it, along with Frequency, "enter[ed] into [the APA] on April 30, 2007 with Plaintiffs, some of whom are citizens of Texas." (Pls.' Orig. Pet. ¶ 16.) Plaintiffs are wrong. ASCP is not a party to the APA, a copy of which was attached to plaintiffs' original petition and clearly demonstrates that the

8

only buyer was Frequency. (*See* Frequency Aff. Ex. 1 ("Signature Page to the Asset Purchase Agreement").) Plaintiffs concede this in their original petition: "ASCP knew or had reason to know of Plaintiffs' contract *with Frequency* and Plaintiffs' interest in that contract." (Pls.' Orig. Pet. ¶ 49 (emphasis added).) Thus, the APA is not a basis for jurisdiction over ASCP. Indeed, even if ASCP were a party to the APA, for the same reasons that the APA fails to confer jurisdiction over Frequency, it would also fail to confer jurisdiction over ASCP. (*See* Section I.A.1, *supra*.)

       *Second*, plaintiffs' allegations with respect to their tort claims against ASCP cannot support personal jurisdiction, either general or specific, because they do not relate to any activity by ASCP that took place in or that is substantially connected to Texas. Plaintiffs allege that: "ASCP . . . induced Plaintiffs to enter into the APA by promising to pay Plaintiffs $452.1 million for the radio stations being acquired"; "[b]y misrepresenting their ability and willingness to buy the stations at the agreed price, ASCP . . . induced Clear Channel to take 36 of the 54 markets out of the auction and end dealings with other bidders"; and "ASCP willfully and intentionally interfered with the contract between Plaintiffs' [sic] and Frequency by inducing Frequency to breach the contract and hindering performance of the APA." (Pls.' Orig. Pet. ¶¶ 36, 42, 50.) Significantly, plaintiffs fail to allege that any conduct by ASCP relating to those averments took place in Texas—because they know it did not. ASCP's only contact with either plaintiffs, if any, or Frequency occurred outside the state. Therefore, even if plaintiffs' allegations were true (and they are not), they would be insufficient to satisfy the requirements of personal jurisdiction in Texas. *See Geo-Chevron Ortiz Ranch*, 2007 WL 671340, at *3, *5 (allegations of a tortious act directed at a Texas resident are insufficient to confer specific jurisdiction).

9

*Third*, ASCP does not conduct "continuous and systematic" business in Texas, *see* Kaufman Aff. ¶ 5, and plaintiffs have not alleged to the contrary. Thus, general jurisdiction cannot exist over ASCP. *See BMC*, 83 S.W.3d at 797.

### 3.    This Court lacks personal jurisdiction over Frequency License.

Plaintiffs' sole jurisdictional allegation relating to Frequency License is conclusory and without basis: *i.e.*, that Frequency License "engages in business in Texas." (Pls.' Orig. Pet. ¶ 12.) That allegation is false. Frequency License does not engage in business in Texas. (Frequency License Aff. ¶ 5.) And, as plaintiffs concede, *see* Pls.' Orig. Pet. ¶ 12, Frequency License is a nonresident of Texas. As such, absent any relevant contacts with the forum, it is not subject to jurisdiction of the Texas courts. *See Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496, 502 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (if the plaintiff does not plead jurisdictional allegations, the defendant can satisfy its burden of negating all bases of personal jurisdiction by presenting evidence that it is a nonresident).

In addition, since Frequency License does not conduct *any* business in Texas, *see* Frequency License Aff. ¶ 5--and plaintiffs have not alleged to the contrary--general jurisdiction cannot exist over it. *See BMC*, 83 S.W.3d at 797.

### 4.    This Court lacks personal jurisdiction over Warshaw.

Warshaw has not purposefully availed himself of the privilege of doing business in Texas. Plaintiffs assert that Warshaw is subject to jurisdiction because he committed "a tort, which is the subject of this suit, in whole or in part in Texas." (Pls.' Orig. Pet. ¶ 17.) But no specific tortious conduct is alleged to have occurred in Texas. Plaintiffs have failed to allege any act by Warshaw in Texas, much less one with a "substantial connection" to their claims, that gives rise to plaintiffs' claim for tortious interference. The only relevant allegation is the

conclusory one that Warshaw "willfully and intentionally interfered with the contract between Plaintiffs' [sic] and Frequency by inducing *Frequency* to breach the contract and hindering performance of the APA." (*See* Pls.' Orig. Pet. ¶ 56 (emphasis added); *see also id.* ¶¶ 53-58.) Again, the allegation carefully avoids locating this conduct in Texas--because plaintiffs know that Warshaw's only contact with Frequency occurred outside the state. (*See* Warshaw Aff. ¶ 7.) Therefore, even if plaintiffs' allegations were true--and they are not--Warshaw has not committed a tort in Texas that could serve as the basis for specific jurisdiction

    Warshaw's July 19, 2007, phone call with CCBI CEO Mark Mays, *see* Pls.' Orig. Pet. ¶¶ 24-25, is irrelevant, because it does not give rise to plaintiffs' tortious interference claim. Plaintiffs allege that Warshaw induced Frequency, not CCBI, to breach the contract, so a communication that Warshaw might have had with CCBI is beside the point. Thus, plaintiffs' claim against Warshaw must be dismissed for lack of personal jurisdiction. *See Alenia Spazio, S.p.A.*, 130 S.W.3d at 214-15 (no jurisdiction over the defendant with respect to tortious interference claim where there was no evidence in the record that the alleged interference took place in Texas).

    Similarly, Warshaw cannot be subject to general jurisdiction in Texas. He has no relevant contacts with Texas. (*See* Warshaw Aff. ¶ 8.) In the past five years, he has made only two business trips to the state. (*See id.* ¶ 5.) Those two trips fail to rise to the level of the requisite "continuous and systematic" contacts with Texas for general jurisdiction. *See Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798, 803 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (defendant's eight to ten visits to Texas, for a total of about sixty days, in the five years preceding the alleged injury did not satisfy the requirements of general jurisdiction).

11

"Mere travel to Texas is insufficient to establish continuous and systematic contact with the forum state." *Id.*

## B.    Exercising Jurisdiction Would Offend Traditional Notions Of Fair Play And Substantial Justice.

Even if the Court were to find that any defendant had minimum contacts with Texas, exercise of jurisdiction over that defendant in Texas would not comport with notions of fair play and substantial justice. In deciding this issue, courts consider the following factors: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiffs' interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987); *Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991).

The burden on defendants to litigate in Texas weighs in favor of dismissal. It is uncontested that defendants are not residents of Texas. They have no employees or offices in Texas. Their witnesses and evidence relevant to this dispute are located outside Texas, and thus defendants and their witnesses will incur substantial inconvenience and cost to travel to Texas in connection with the lawsuit. *See Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 32 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.) (considering the defendant's travel costs in assessing the burden on the defendant to litigate in Texas).

Texas's interest in adjudicating the dispute is minimal. Although plaintiffs have their principal places of business in Texas, not one is a Texas business entity. The contract at issue is for the sale of radio stations located outside Texas. Indeed, none of defendants ever entered Texas in connection with the APA.

12

Plaintiffs can obtain efficient and effective relief in New York, where there is another action pending involving the APA (and where several of the radio stations that are subject to the contract are located). (*See* Frequency Aff. ¶ 9.) Whereas Texas cannot, consistent with due process, exercise jurisdiction over any of the four defendants, New York has jurisdiction over Frequency, Frequency License and ASCP, as well as over CCBI, the entity that plaintiffs concede contracted to sell the stations. (*See* Pls.' Org. Pet. ¶¶ 2, 42-43.)

### Conclusion

Defendants Frequency, Frequency License, ASCP and Warshaw pray that the Court dismiss plaintiffs' claims against them for lack of personal jurisdiction. Defendants also pray for all other relief to which they may be entitled.

### 2. SPECIAL EXCEPTIONS

Subject to and without waiving their special appearance, as pleaded above, defendants specially except to all counts (paragraphs 31-58) of plaintiffs' original petition on the basis that each fails to state any cause of action against defendants. Defendants respectfully show the Court as follows:

## I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT I).

Frequency specially excepts to plaintiffs' claim for breach of contract (Count I) (paragraphs 31-34), which is based upon (1) Warshaw's alleged statement that Frequency would not close the deal unless the price was reduced and (2) Frequency's alleged failure to provide adequate assurance of its intent to close. (*See* Pls.' Orig. Pet. ¶ 33.)

Plaintiffs' claim for breach of contract alleges that Frequency has anticipatorily repudiated the APA. However, plaintiffs fail to plead the absolute repudiation required to sustain such a claim. *See El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex.

13

App.—Houston [1st Dist.] 2003, pet. denied).  Plaintiffs purport to demonstrate Frequency's

anticipatory breach from a July 19, 2007, phone conversation between Warshaw and CCBI CEO

Mays. (*See* Pls.' Orig. Pet. ¶ 33; *see also id.* ¶¶ 24-25.)  They allege that Warshaw, acting as

Frequency's consultant, informed Mays that Frequency "would not close under the . . . APA

unless Plaintiffs agreed to reduce the purchase price from $450 million (actually $452.1) to $350

million." (*Id.* ¶ 25.)

      Anticipatory breach, however, requires a "positive and unconditional refusal to

perform a contract in the future." *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—

Houston [1st Dist.] 2000, pet. denied).  Here, there was no such absolute and unconditional

refusal to perform.  Tellingly, plaintiffs refer to (and rely upon) Frequency's letter of July 31,

2007, responding to plaintiffs' charges of anticipatory repudiation, but omit the very portion of

the letter in which Frequency clearly indicates that it has not terminated or repudiated the

contract. (*See* Frequency Aff. Ex. 13.)  That evidence--cited by plaintiffs themselves--is fatal to

their claim.

      Plaintiffs' breach of contract claim also fails because plaintiffs have not indicated

whether they have rescinded the contract based upon the alleged anticipatory breach or are

treating the contract as still in effect.  They cannot have it both ways.  "The non-repudiating

party must either rescind or retain his former rights under the contract; he may not do both."

*Tennessee Gas Pipeline v. Lenape Res. Corp.*, 870 S.W.2d 286, 303 (Tex. App.— San Antonio

1993) *aff'd in part and rev'd in part on other grounds*, 925 S.W.2d 565 (Tex. 1996) (no breach

of contract based upon anticipatory repudiation where the plaintiff continued to treat the contract

as in effect).

14

## II.    PLAINTIFFS' TORT CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW.

### A.    Although Counts II Through V Are Governed By New York Law, The Elements Of The Causes Of Action In Texas And New York Are Substantially Similar.

Texas law governs plaintiffs' contract claim pursuant to Section 11.9 of the APA, but New York law applies to the tort claims. *See Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999). Texas courts rely upon the "most significant relationship" test to determine which state's law should apply to a tort claim. *See State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 290-91 (Tex. App.—Corpus Christi 1990, writ denied).[1] New York clearly has the strongest interest in this case. The torts that plaintiffs allege are based primarily upon the conduct of employees of Frequency and ASCP, both of which have their primary place of business in New York. Several radio stations to be sold under the APA are located in New York, including certain ones--*i.e.*, those in the Poughkeepsie market--that are central to the factual issues in the case.

Nevertheless, the elements of the torts that are alleged--*i.e.*, fraud, tortious interference with prospective business relations and tortious interference with an existing contract--are substantially similar under both New York and Texas law. Consequently, plaintiffs' claims are legally insufficient no matter which state's law applies.[2]

---

[1] In doing so, they take into consideration the following factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *State Nat'l Bank*, 802 S.W.2d at 290 (citing *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979)).

[2] *See, e.g.*, *National Union Fire Ins. Co. v. Worley*, 690 N.Y.S.2d 57, 61 (N.Y. App. Div. 1999) (fraudulent inducement); *Zoya Enters., Inc. v. Sampri Invs., L.L.C.*, No. 14-04-01158-CV, 2006 WL 1389582, at *5 (Tex. App.—Houston [14th Dist.] May 23, 2006, no pet.) (fraudulent inducement); *Advanced Global Tech LLC v. Sirius Satellite Radio, Inc.*, 836 N.Y.S.2d 807, 809-810 (N.Y. Sup. Ct. 2007) (tortious interference with prospective business relations); *Baty v. Protech Ins. Agency*, 63 S.W.3d 841, 859-60 (Tex. App.—Houston [14th Dist.] 2001, pet.

**B.     Plaintiffs' Sole Basis For Their Fraud Claim Is Insufficient As A Matter Of Law (Count II).**

Defendants specially except to Count II (paragraphs 35-40) of plaintiffs' original petition because plaintiffs have failed to state a cause of action for fraud. Plaintiffs' fraud claim is based *solely* upon Frequency's and ASCP's alleged "current refusal and unwillingness to pay the agreed upon purchase price and to abide by the terms of the APA." (*See* Pls.' Orig. Pet. ¶ 36.) Those allegations are insufficient as a matter of law to support a claim of fraud.

Under Texas law, failure to perform a promised act is a breach of contract, not fraud. "A promise to do an act in the future is actionable fraud when made with the intention, design, and purpose of deceiving and with no intention of performing the act." *Central Texas Micrographics v. Leal*, 908 S.W.2d 292, 299 (Tex. App.—San Antonio 1995, no writ) (affirming a directed verdict in favor of the defendant on a fraud claim because there was no evidence that the plaintiff's promise to pay was false when he made it); *see also T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992) (affirming a take-nothing judgment for the defendant where there was insufficient evidence of fraudulent intent at the time of the alleged inducement); *Locascio v. James V. Acquavella, M.D., P.C.*, 586 N.Y.S.2d 78, 79 (N.Y. App. Div. 1992) (reversing denial of and granting motion to dismiss where the sole basis for a fraud claim was a failure to perform).

Plaintiffs' only allegation of Frequency's or ASCP's intent is their alleged failure to perform.[3] As a matter of law, this is insufficient to establish fraud. *Devereux v. Alvin State*

---

denied) (tortious interference with prospective business relations); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996) (tortious interference with an existing contract); *Baty*, 63 S.W.3d at 856-57 (tortious interference with an existing contract).

[3] Plaintiffs' conclusory assertion in paragraph 37 of Frequency's or ASCP's alleged intent not to perform is no help because the specific allegation relating to intent in paragraph 36

16

*Bank,* No. 14-98-00698-CV, 1999 WL 816157, at *4 (Tex. App.—Houston [14th Dist.] Oct. 14,

1999, pet. denied) (not designated for publication); *see also Figueroa v. West,* 902 S.W.2d 701,

707 (Tex. App.—El Paso 1995, no writ) (affirming directed verdict for the defendant on a fraud

claim because "[e]vidence of post-representation non-conformity is alone no evidence of fraud");

*see also Locascio,* 586 N.Y.S.2d at 79 ("Although fraud may exist in the inducement of a

contract, where, as where, it is based solely on the failure to perform a promised future act,

plaintiff's remedy lies in an action on the contract"). The purpose of the rule is clear: *i.e.,* to

separate true fraud claims from instances such as this, where the plaintiffs are really alleging

merely a breach of contract.

> Cases in which a party was induced into signing a contract by a promise that the
> promisor had no intention of keeping at the time he made the promise are to be
> distinguished from situations in which a party has made a promise with an
> existent intent to fulfill its terms and who then changes his mind and refuses to
> perform; otherwise, every breach of contract would involve fraud.

*Devereux,* 1999 WL 816157, at *4. Even taking plaintiffs' allegations at face value, this case

falls into the second category. The original petition relies upon nothing more than an alleged

subsequent breach of contract to plead that defendants did not have an intent to perform—and that

is insufficient.

If anything, this claim sounds in contract, not fraud; and a conclusion to the

contrary would lead to the absurd result that all contract breaches are frauds. The Court should

dismiss the fraud claim as legally insufficient.

---

controls. *See Monsanto Co. v. Milam,* 494 S.W.2d 534, 536 (Tex. 1973) ("The specific
allegation controls over the general allegation"). Moreover, ASCP had no duty to perform under
the APA because it was not a party to the contract. (*See* Kaufman Aff. ¶ 4.)

17

## C.    Plaintiffs' Allegations Are Insufficient To Establish Their Tortious Interference With Prospective Business Relations Claim (Count III).

Defendants specially except to Count III (paragraphs 41-46) of plaintiffs' original petition because plaintiffs have failed to state a cause of action for tortious interference with prospective business relations. Plaintiffs allege that defendants tortiously interfered with their plans to sell the stations to other bidders "through misrepresentation" culminating in the execution of the APA. (*See* Pls.' Orig. Pet. ¶ 42.) As discussed above, *see* sections I and II.B, *supra*, however, their allegations are insufficient to establish either breach of contract or fraud. This claim should be dismissed for the same reasons.

Like plaintiffs' fraud claim, the claim for tortious interference with prospective business relations is nothing more than a contract claim in tort's clothing. Plaintiffs assert that ASCP and Frequency induced CCBI to take certain radio stations off the auction block and, in doing, interfered with CCBI's ability to sell them. (*See* Pls.' Orig. Pet. ¶ 42.) But plaintiffs concede that CCBI *did* in fact contract to sell the stations—to Frequency. (*See, e.g.*, Pls.' Orig. Pet. ¶¶ 19-22.) Plaintiffs' real complaint—*i.e.*, that Frequency has allegedly refused to close on the deal—is breach of contract.

As such, plaintiffs fail to plead an essential element of the tort of tortious interference with prospective business relations. *See Baty*, 63 S.W.3d at 860. To state a claim, plaintiffs must allege "that the defendant's conduct would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (reversing judgment of liability for tortious interference with prospective business relations); *see also Advanced Global Tech LLC v. Sirius Satellite Radio, Inc.*, 836 N.Y.S.2d 807, 809-813 (N.Y. Sup. Ct. 2007). What plaintiffs allege is that, by contracting to purchase certain stations, Frequency prevented others from doing so. That is not tortious. *See NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87

18

N.Y.2d 614, 624-25 (N.Y. 1996) (affirming summary judgment for the defendant purchaser of a company whose actions were alleged to have scuttled another putative buyer's bid).  Plaintiffs also allege that Frequency is refusing to pay for the stations. That too is not tortious. *See, e.g., Devereux,* 1999 WL 816157, at *4-5; *see also Locascio,* 586 N.Y.S.2d at 79.

### D.    Plaintiffs Fail To State A Claim For Tortious Interference With An Existing Contract Against Either ASCP Or Jeffrey Warshaw (Counts IV and V).

Defendants specially except to Counts IV and V (paragraphs 47-58) of plaintiffs' original petition because plaintiffs have failed to state a cause of action for tortious interference with contract. Tortious interference with an existing contract cannot be committed by a party to the contract. "By definition, the person who induces the breach cannot be a contracting party." *Holloway v. Skinner,* 898 S.W.2d 793, 795 (Tex. 1995) (reversing judgment of tortious interference against executive and director who induced their company to default on obligations and rendering summary judgment); *accord Grieve v. Barclays Capital Secs. Ltd.,* No. 602820/1998, 1999 WL 1680654, at *5 (N.Y. Sup. Ct. Sept. 10, 1999) ("[a] cause of action for tortious interference may only lie against a stranger to a contract, such as a third party"). The original petition's allegations that ASCP controls Frequency and that Warshaw is its consultant are fatal to plaintiffs' claims because, as discussed below, controlling entities like ASCP and consultants like Warshaw are equivalent to the contracting party for tortious interference purposes. The Court should therefore dismiss these claims.

### 1.    ASCP could not tortiously interfere with the APA because plaintiffs allege that Frequency is owned and controlled by ASCP.

Plaintiffs' allegation that ASCP has "'ultimate' ownership and control" over Frequency is fatal to the tortious interference claim against ASCP. (*See* Pls.' Orig. Pet. ¶ 20.) The original petition states that ASCP "formed" Frequency, "agreed to fund [its] financial

19

obligations" and "either directly or indirectly manages and controls [its] day-to-day business activities." *Id.* Under Texas law, a plaintiff cannot recover for tortious interference from a defendant that controls and has a financial interest in one of the parties to the contract and interferes for financial reasons. *See, e.g., Schoellkopf v. Pledger,* 778 S.W.2d 897, 902-03 (Tex. App.—Dallas 1989, writ denied) (reversing jury finding of tortious interference); *Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico, Inc.,* 304 F. Supp.2d 903, 912 (W.D. Tex. 2003) (dismissing tortious interference claim because "[a]s a matter of law, a parent corporation is incapable of tortiously interfering with its subsidiary's contracts"); *see also MTI/The Image Group, Inc. v. Fox Studios East, Inc.,* 690 N.Y.S.2d 576, 579 (N.Y. App. Div. 1999) (reversing denial of motion to dismiss a tortious interference claim where the defendants were parent and sister companies).[4] In *Schoellkopf,* the Dallas court of appeals held that, as a matter of law, the defendants could not tortiously interfere with the contract of "a company [they] owned, controlled and dominated." *Schoellkopf,* 778 S.W.2d at 902-03. Nor could ASCP have tortiously interfered here.

2. **Warshaw could not tortiously interfere with the APA because plaintiffs allege that he is a consultant of Frequency's and acted in furtherance of Frequency's interests.**

Plaintiffs' factual allegations regarding Warshaw preclude any claim for his tortious interference in the APA. The original petition alleges that Warshaw was retained by

---

[4] Plaintiffs cannot rely upon *Valores Corporativos, S.A. de C.V. v. McLane Co.,* 945 S.W.2d 160 (Tex. App.—San Antonio 1997, writ denied), to save their claim. *Valores,* which "decline[d] to follow [its] sister courts" and rejected a blanket rule that a parent was incapable of interfering tortiously with the contracts of its subsidiary, merely recognized the *possibility* that "circumstances may arise in which the financial interests of neither motivate the interference." *Id.* at 168. The only motivation that plaintiffs offer here, however, is a financial one. In particular, their allegations that ASCP sought to reduce the purchase price of the stations (which inherently would advance Frequency's financial interests), *see* Pls.' Orig. Pet. ¶¶ 25-26, preclude application of *Valores.*

ASCP and Frequency as their consultant in connection with the acquisition of the stations and that he considered Frequency his "client." (*See* Pls.' Orig. Pet. ¶¶ 24-26.) Plaintiffs allege that, in this capacity, Warshaw negotiated for a lower price. *Id.* The original petition establishes that Warshaw was no stranger to Frequency, and, accordingly, liability for tortious interference with Frequency's contract cannot attach. *See, e.g.*, *Wilson v. Lewis*, No. 04-97-744-CV, 1999 WL 93364, at *2 (Tex. App.—San Antonio Feb. 17, 1999, no pet.) (not designated for publication) (affirming summary judgment on a tortious interference claim in favor of the defendant supervisors who had terminated the employee); *see also Lutz v. Caracappa*, 828 N.Y.S.2d 426, 427 (N.Y. App. Div. 2006) (affirming dismissal of a tortious interference claim against the agent of the contracting party).

Retained by Frequency and pursuing its interests, Warshaw cannot be considered sufficiently distinct from Frequency tortiously to interfere with its contract. In *Wilson*, the San Antonio court of appeals affirmed summary judgment for two employees of a hospital whose duties included evaluating the performance of the plaintiff doctor. The plaintiff was fired on the defendants' recommendation and sued them for interfering with his employment contract with the hospital. *Wilson*, 1999 WL 93364 at *1-3. The court held that the defendants could not be liable unless "the alleged act of interference was 'performed in furtherance of the defendant's personal interests.'" *Id.* Indeed, for liability to attach, conduct constituting actionable interference must be undertaken *solely* in furtherance of the defendants' interests. *See Holloway*, 898 S.W.2d at 796 (to establish a prima facie case, "the plaintiff must show that the defendant acted in a fashion *so contrary to the corporation's best interests that his action could only have been motivated by personal interests*") (emphasis added).

21

Plaintiffs have the burden of establishing that Warshaw acted solely to benefit himself and not Frequency. *See id.* Their allegations make it impossible to satisfy that burden. What the original petition alleges is just the opposite of Warshaw's pursuing solely his own interests: *i.e.*, the original petition alleges that Warshaw negotiated for Frequency's benefit. Given this, he cannot be liable for tortious interference.

### Conclusion

Defendants Frequency, Frequency License, ASCP and Warshaw pray that the Court grant their special exceptions and dismiss all counts of plaintiffs' original petition. Defendants also pray for all other relief to which they may be entitled.

### 3. ORIGINAL ANSWER

1.  Subject to defendants' special appearance and special exceptions, as pleaded above, defendants answer plaintiffs' original petition as follows:

2.  Pursuant to Rule 92 of the Texas Rules of Civil Procedure, defendants generally deny and demand strict proof of each and every material allegation contained in plaintiffs' live petition. Defendants reserve the right to amend their answer.

3.  Defendants specifically deny the conditions precedent pleaded by plaintiffs in Paragraph 30 of the original petition. Specifically, the conditions precedent to consummation of the sale and purchase of the radio stations have not occurred, and payment has not been, and cannot be, demanded at this time. For example, the FCC Consent has not become a final order as required in Section 7.3 of the APA. Furthermore, Frequency has not terminated the APA. Although Frequency reserves all its rights under the APA, including its right to terminate, as set forth in Section 10.1(b), Frequency has always maintained that it has complied and will continue to comply with the APA so long as it remains in effect.

22

4.    Defendants plead that their liability is limited by contract.

5.    Defendants plead the defense of justification.

6.    Plaintiffs' claim for punitive or exemplary damages is subject to the limitations and requirements of Chapter 41 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, including the cap on exemplary damages set out in Section 41.008(b).

7.    Defendants plead the defense of unconstitutionality, in that any award of punitive or exemplary damages would constitute imposition of a criminal penalty without the safeguards guaranteed by the Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments of the Constitution of the United States; similar provisions of the Texas Constitution, including Article I, Sections 3, 10, 13, 14 and 19; and *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). Furthermore, imposition of such punitive or exemplary damages constitutes an excessive fine under the Eighth Amendment, denies equal protection of the laws under the Fourteenth Amendment and violates the due process clause of the Fifth and Fourteenth Amendments. Any claim by plaintiffs for punitive damages should be stricken as unconstitutional and any award of punitive or exemplary damages should be set aside.

8.    In the event that any plaintiff settles with any firm, corporation, person or entity, defendants, and each of them, request a credit or reduction against any verdict pursuant to applicable law.

**PRAYER FOR RELIEF**

Therefore, defendants respectfully request the following relief:

1.    That this action be dismissed for want of personal jurisdiction over Frequency, Frequency License, ASCP and Warshaw;

23

2.    That the Court grant defendants' special exceptions and dismiss all counts of

plaintiffs' original petition;

3.    That plaintiffs take nothing in this suit;

4.    That reasonable costs and attorneys' fees incurred by defendants in objecting to

the Court's jurisdiction be taxed against plaintiffs; and

5.    Any other and further relief to which defendants are entitled.

Dated: September 7, 2007                    Respectfully submitted,

Emerson Banack, Jr.
Texas Bar No. 01667000
Langley & Banack, Inc.
Suite 900, Trinity Plaza II
745 East Mulberry
San Antonio, TX 78212-3166
ebanack@langleybanack.com
Tel: (210) 736-6600
Fax: (210) 735-6889

Karl S. Stern
Texas Bar No. 19175665
kstern@velaw.com
Jeffrey S. Johnston
Texas Bar No. 24002368
jjohnston@velaw.com
Jennifer H. Davidow
Texas Bar No. 24028268
jdavidow@velaw.com
VINSON & ELKINS L.L.P.
2500 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760
Tel: (713) 758-2222
Fax: (713) 758-2346

24

**OF COUNSEL:**

Max Shulman
mshulman@cravath.com
Michael Reynolds
mreynolds@cravath.com
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on the _10_ day of _September_ 2007, I caused the foregoing document to be served to the following attorney(s) for Plaintiffs by electronic service, hand delivery, facsimile, and/or certified mail, return receipt requested:

R. Laurence Macon
Akin Gump Straus Hauer & Feld L.L.P.
300 Convent Street, Suite 1600
San Antonio, Texas 78205
lmacon@akingump.com

Emerson Banack, Jr.

26

CAUSE NO. 2007 CI 12493

| | | |
|---|---|---|
| CLEAR CHANNEL BROADCASTING, INC., | § | IN THE DISTRICT COURT OF |
| CLEAR CHANNEL BROADCASTING | § | |
| LICENSES, INC., CC LICENSES, LLC, | § | |
| CAPSTAR RADIO OPERATING COMPANY, | § | |
| CAPSTAR TX LIMITED PARTNERSHIP, | § | |
| AMFM RADIO LICENSES, LLC, | § | |
| CITICASTERS CO., CITICASTERS | § | |
| LICENSES, L.P. and JACOR | § | |
| BROADCASTING CORPORATION | § | |
| | § | |
| Plaintiffs, | § | |
| | § | BEXAR COUNTY, TEXAS |
| v. | § | |
| | § | |
| FREQUENCY, LLC | § | |
| (f/k/a GOODRADIO.TV, LLC), | § | |
| FREQUENCY LICENSE, LLC | § | |
| (f/k/a GOODRADIO.TV LICENSE, LLC), | § | |
| AMERICAN SECURITIES CAPITAL | § | |
| PARTNERS, LLC and JEFFREY D. | § | |
| WARSHAW | § | |
| | § | |
| Defendants. | § | 288th JUDICIAL DISTRICT |

### AFFIDAVIT OF PAUL KASPER FOR FREQUENCY, LLC

BEFORE ME, the undersigned authority, on this day personally appeared Paul Kasper, who under oath stated as follows:

1. My name is Paul Kasper. I am over the age of eighteen and am of sound mind and am fully competent to make this affidavit. I am the Vice President of Frequency, LLC ("Frequency") (formerly known as GoodRadio.TV, LLC). I am familiar with the corporate records and activities of Frequency. I have personal knowledge of the facts hereinafter stated, and said facts are true and correct. This affidavit is made voluntarily and not under duress.

2. Frequency is a limited liability company organized under the laws of Delaware with its principal place of business in New York.

## EXHIBIT A

3. Frequency has not consented to jurisdiction in Texas in this case, in writing or otherwise.

4. Frequency and Clear Channel Broadcasting, Inc. ("CCBI") (and several of CCBI's corporate affiliates) entered into an Asset Purchase Agreement, dated as of April 30, 2007 ("APA"), pursuant to which Frequency contracted to purchase from CCBI certain of CCBI's radio stations and related assets, for a price of $452,100,000.

5. All conditions precedent to consummation of the sale and purchase of the radio stations have not occurred. For example the FCC Consent has not become a final order as required in Section 7.3 of the APA.

6. The terms of the APA were negotiated over the phone and by email. No representative of Frequency ever traveled to or was present in Texas in connection with the APA.

7. On August 20, 2007, Frequency filed a complaint against CCBI in the Commercial Division of the Supreme Court of the State of New York, *Frequency, LLC v. Clear Channel Broadcasting, Inc.*, Index No. 602808/07 ("NY Action"), seeking damages and rescission for breach of the APA and declaratory relief. The complaint was filed under seal.

8. Also on August 20, 2007, Frequency served CCBI with a summons and the complaint in the NY Action.

9. On September 4, 2007, CCBI removed the NY Action to the U.S. District Court for the Southern District of New York. The case is *Frequency, LLC v. Clear Channel Broadcasting, Inc.*, 07-CV-7785.

10. Frequency has not, either by itself or through its agents:

    a. had an office, employee, place of business, postal address or telephone listing in Texas;

b.  traveled to Texas;

c.  been licensed or applied for a license to do business in Texas;

d.  had or been required to have a designated agent for service of process in Texas;

e.  owned, used or possessed any real property in Texas;

f.  been a party to litigation in state or federal court in Texas, before this suit;

g.  had any agents assigned to work for it in Texas; or

h.  maintained any bank accounts or other property in Texas.

11.  Attached hereto as Exhibit 1 is a true and correct copy of the APA.

12.  Attached hereto as Exhibit 2 is a true and correct copy of Exhibit A to the APA.

13.  Attached hereto as Exhibit 3 is a true and correct copy of a July 31, 2007 letter from Eric Schondorf to Andrew Levin.


_____  Date 9/7/07
Paul Kasper


SWORN AND SUBSCRIBED TO before me on this the 7th day of Sept., 2007.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF NEW YORK


ADRIANE J. BAILEY-BECK
NOTARY PUBLIC, State of New York
No. 01BA5090019
Qualified in Westchester County
Commission Expires July 8, 2010

## VERIFICATION

STATE OF NEW YORK      )
                               )

CITY OF NEW YORK       )

BEFORE ME, the undersigned authority, on this day personally appeared Paul Kasper, who, being by me duly sworn on oath deposed and said that he is the Vice President of Frequency, LLC, and is the duly authorized agent for Frequency, LLC, in the above-entitled and numbered cause; that he has read **Defendants' Special Appearance and, Subject Thereto, Special Exceptions and Original Answer** and that every factual statement contained in the Special Appearance and in paragraph 3 of the Original Answer relevant to Frequency, LLC is within his personal knowledge and is true and correct.

_____
Paul Kasper

Subscribed and sworn to before me, a Notary Public, on this 7th day of Sept, 2007.

_____
Adriane J. Bailey-Beck

ADRIANE J. BAILEY-BECK
NOTARY PUBLIC, State of New York
No. 01BA5030018
Qualified in Westchester County
Commission Expires July 5, 2010